574 So.2d 1314 (1990)
Raul Rolando FLORES and James Ray Vanetten
v.
STATE of Mississippi.
No. 07-KA-58937.
Supreme Court of Mississippi.
December 19, 1990.
*1315 G. Gilmore Martin, Martin & Sherard, Vicksburg, for appellants.
Mike C. Moore, Atty. Gen., Charles W. Maris, Jr. and Deirdre McCrory, Sp. Asst. Attys. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and ANDERSON and PITTMAN, JJ.
ANDERSON, Justice, for the Court:
This is an appeal from the Circuit Court of Hinds County, wherein the appellant, James Ray VanEtten was convicted of conspiracy to distribute more than one kilogram of marijuana and sentenced to fifteen years imprisonment. Now, VanEtten appeals to this Court assigning four errors. Finding that only one assignment has merit and requires us to reverse this case, we address the following:

THE COURT ERRED IN NOT DISMISSING THE INDICTMENT FOR FAILURE OF THE STATE TO PROSECUTE WITHIN 270 DAYS OF ARRAIGNMENT

STATEMENT OF THE FACTS
During this trial six witnesses testified. In addition to the two defendants, three *1316 officers and another co-conspirator (co-defendant), and Bobby Layton took the stand.
At the time of the conspiracy Layton lived in Edwards, MS. When the trial was held Layton had known defendant for approximately eleven years. Layton testified that VanEtten came to him in December 1983 to borrow $300 so that he could go to Texas to "score some marijuana." In addition to repayment, Layton was to receive more money and all the marijuana he wanted to smoke. VanEtten went to Texas and returned with nothing.
A month or so later Layton and VanEtten went to Texas in VanEtten's van to score (pick up) some marijuana to sell. They went to an apartment in Pasadena, Texas, a suburb of Houston. VanEtten was to get payments from what he sold, and Layton was to receive payment for storing the marijuana in his home. He did not know of what other arrangements VanEtten may have made with the people in Texas. Layton and VanEtten returned to Edwards. They kept the marijuana at Layton's home. Periodically VanEtten would come to Layton's home to take some to sell.
Layton and VanEtten took another trip to Texas in April 1984. This time they went in VanEtten's car. Joining them was VanEtten's friend, Tink. VanEtten had asked Layton for more money, but Layton chose to travel with him instead. Again, Layton was to get some payments, but he was also to get payment in kind  all the marijuana he wanted to smoke.
When they arrived in Pasadena, they went to a bar where VanEtten made some phone calls. A few hours later Flores joined them. It was Layton's impression that Flores was the connection to "score some weed." After they left the bar, Layton, Tink, VanEtten and Flores went to the same apartment where Layton and VanEtten had gone during their first visits to Texas. While they were at the apartment they were joined by a Roy and Migel. During the night they loaded two suitcases with about thirty pounds of marijuana, and loaded them into the car for the return trip to Edwards.
According to Layton, Migel was to ride back with him and Tink to make sure the marijuana arrived in Vicksburg. Flores, however, was to meet the parties in Jackson the following day. He was coming to Jackson to collect money from the sale of the marijuana, which was stored at Layton's house. Of course, Layton was to be paid some money, but he was also allowed to smoke what he wanted.
When they arrived at his home Layton stored the marijuana in his bedroom closet. Migel remained at Layton's home to make sure "nobody ripped them off" while Tink and VanEtten went somewhere else. The following night Layton and Migel went to the airport to pick up VanEtten and returned to Layton's home. During the next few days, several pounds of the marijuana were sold. Apparently, VanEtten was the seller because he would take pounds of the marijuana and return with money. Layton, however, only saw an exchange of money between VanEtten and Flores on one occasion. They were at the house two or three days before they were busted. Once when VanEtten was coming to make a purchase or pick up a package, he blew his engine in his car, and it had to be towed to Layton's house where it remained.
On Sunday, May 6, 1984, law officers executed a search warrant at Layton's residence. They recovered nine pounds of marijuana, which was still in the suitcase in the closet. Pursuant to this search everyone in the house was arrested. This included Layton and his wife, Flores, and Migel. Officers also confiscated $6,223.48 from Flores' pocket. They also discovered VanEtten's car at the scene and found that it was registered to him.
Subsequently, Layton agreed to cooperate with the authorities. For what it is worth, Layton agreed to cooperate, and if his testimony was sufficient enough, then he and his wife would not be prosecuted. If he did not cooperate, he would be charged with possession with the intent to distribute. Of course he would probably lose his wife, house and children. And, since he was an habitual offender, he could *1317 possibly face fifteen to twenty years without parole.[1]
At the conclusion of the trial Flores and VanEtten were convicted of conspiracy to distribute more than a kilogram of marijuana and sentenced to fifteen years in prison.[2]

LAW
The Sixth and Fourteenth Amendments of the United States Constitution and Article 3, Section 26 of the Mississippi Constitution of 1890 guarantee a defendant the right to a speedy trial. In addition, Mississippi Code Ann. § 99-17-1 (Supp. 1990) requires that a defendant be brought to trial within 270 days after arraignment "unless good cause [can] be shown, and a continuance duly granted by the Court." This language is plain and unambiguous. See, Payne v. State, 363 So.2d 278 (Miss. 1978); Vickery v. State, 535 So.2d 1371, 1375 (Miss. 1988).
Because this is a speedy trial issue, a chronology is provided:

 6/19/84 Indictment filed against VanEtten.
 7/02/84 VanEtten waives arraignment.
 7/09/84 Opening of July Term.
 7/10/84 VanEtten moves for severance.
 9/12/84 Court grants State's motion for continuance
 until February '85 term.
 [There is no indication from the record when
 the motion was originally filed].
 2/01/85[*] Case continued until June 1985 term.
 6/20/85 VanEtten submits motion to dismiss.
 6/21/85 VanEtten files motion to dismiss.
 7/08/85 July Term of Court begins.
 7/11/85 Court enters order granting State's Motion for
 Continuance from July 23 to August 8.
 7/11/85 Court overrules VanEtten's motion to dismiss
 for failure to prosecute.
 7/24/85[*] VanEtten files motion for continuance.
 9/04/85 Court grants Flores' motion for continuance to
 allow him time to move for dismissal of charge
 under the 270-day rule.
*1318 9/23/85 September term of Court begins.
 1/28/86 January (February) Term of Court begins.
 2/18/86 Trial begins and both defendants renew their
 motions to dismiss; however, Court overrules
 both motions.

The parties agree that 596 days elapsed between the time of the waiver of arraignment and the time of the trial. Where the state has demonstrated good cause, and a continuance has been granted those dates are not counted against the state. Reed v. State, 506 So.2d 277, 281 (Miss. 1987). Because the accused has no duty to bring himself to trial, however, the state has the burden of establishing that there was good cause for delay. Id. See also Nations v. State, 481 So.2d 760, 761 (Miss. 1985). Moreover, continuances granted to the defendant also toll the running of the statute and should be deducted from the total number of days. Vickery, 535 So.2d at 1376. See also Williamson v. State, 512 So.2d 868, 876 (Miss. 1987).

Time to Count
On September 12, 1984, when the first continuance was granted, seventy-two (72) days had already elapsed. The trial court granted this continuance because "an indictment was returned only several weeks ago and discovery between the defense and the state has just begun and remains incomplete at this time." This continuance was granted until the February term, which incidentally began on January 28. Consequently, a total of 138 days cannot be counted against the state. VanEtten maintains, however, the number of days total 139.
The state contends that a continuance was granted during the February term, and the trial was set for July 23, 1985. This order, however, is not a part of the record, and it is silent regarding the reason for delay. Consequently, this time must "tick against" the State. See, e.g., Vickery, 535 So.2d at 1375 (where the record is silent regarding the reason for the delay the clock ticks against the state). Before July 23, however, the trial court granted a second continuance to the state on July 11, 1985 because the "state [was] involved in [the] trial of [a] death penalty case on date set for hearing of this cause." The court granted this continuance until August 5. Thus, the number of days that were allowed to lapse totaled 164. This simply means that VanEtten has gone 236 days without a trial.
On July 11, the trial court also overruled VanEtten's motion to dismiss for failure to prosecute which had been filed on June 20. On July 24, 1985, VanEtten filed a Motion for continuance. He alleged that he needed additional time because "the trial was originally set for July 23, reset to August 5 and is now set for July 30." The record contains no order from the court granting VanEtten's request. But, the state argues that "presumably the court would not have granted it on less than good cause shown." However, the state concedes that if "this delay is pinned on the state, it was a delay of only 31 days  from August 5, 1985 until September 5, 1985."[3]
On September 4, 1985, the trial court granted Flores' Motion for continuance "to allow defendant to move for a dismissal of the charge under the 270 [sic] Rule." There is no evidence in the record regarding when Flores filed this motion. Moreover, the court did not include how long this continuance was supposed to last. VanEtten argues that this motion should not be charged to him because he did not make it. Furthermore, VanEtten argues that Flores' motion should simply be treated as a special appearance.
The February 1986 term of Court began on January 27, 1986, and the trial was held February 18, 1986. Of course, this simply means that the State allowed twenty-two (22) more days to slip by; therefore, the total number of days has reached 289. VanEtten maintains, however, the number *1319 of days was 290. As a consequence, the State has exceeded the 270 day limit.

What Does The State Argue?
The State concedes that it lost the first seventy-two days between the waiver of arraignment and the first continuance order. But, the State maintains that VanEtten should not get the benefit of the second delay because he did not object or demand a speedy trial at the February 1985 period.
In support of this proposition the State relies on Nations v. State, 481 So.2d 760 (Miss. 1985); State v. Sistrunk, 404 So.2d 564 (Miss. 1981); and State v. Davis, 382 So.2d 1095 (Miss. 1980). These cases, however, can be distinguished easily. In Nations, for example, there was an eighty day delay, and the record did not reflect who made the motion for a continuance. But, the record contained a written order of the circuit judge reciting, "`that said motion is well taken and should be granted.'" 481 So.2d at 762. This Court held that this statement was the equivalent of a judicial finding that good cause existed. But the Court also noted that the better practice for the trial judge would be to announce what the cause was. Id. Parenthetically, the Court noted that Nations did not object to the continuance or take any steps to demand a trial. Id.
In Sistrunk, good cause obviously was demonstrated when the trial judge granted the prosecution's motion for a continuance because of the absence of two material witnesses. 404 So.2d at 565. This continuance extended over a 27-day period, and the defendants remained silent  no objection, no request for a trial. Id. A second order of continuance was entered with the agreement of both parties.
In Davis, this Court also relied on the fact that the defendants did not protest, object or request trial. Moreover, the Court continued, "[t]he delay resulting from this continuance cannot be considered as having been without good cause, especially in the absence of any showing in the record to the contrary." 382 So.2d at 1097. This statement is substantially mitigated, and the court found good cause because, on the day of trial, the defendants filed several motions (specifically, motions to suppress evidence, demurrers to the indictments and motions to quash the indictments based upon alleged racial discrimination in the selection of the grand jury foreman) and some of these motions would require evidentiary hearings. Id. at 1096-97.
Returning to the case sub judice, there is no evidence that there was a motion for a continuance. VanEtten had no knowledge of one; consequently, he could not agree to one. No good cause was demonstrated. As a matter of fact, there is no evidence in the record that shows that the judge even considered a motion. There simply was a delay for no apparent reason. It must be remembered that VanEtten had no duty to bring himself to trial. Reed, supra, 506 So.2d 277. The result  those days must count against the state.
In the above analysis, supra at pp. 1318-1319 VanEtten concedes that the second continuance was properly granted, and it tolled the time. The third continuance is somewhat tricky. There is no order granting a continuance, but there is evidence that VanEtten filed a motion requesting a continuance. Obviously in a generous mood, the State gives VanEtten these 31 days. The simple way to deal with this is to leave with the State the burden of establishing that there was good cause for delay. Nations, 481 So.2d at 761; see also Vickery, 535 So.2d at 1375. Accord Barker v. Wingo, 407 U.S. 514, 529, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972) (the primary burden is on the courts and the prosecutors to assure that cases are brought to trial); see also Trotter v. State, 554 So.2d 313, 317 (Miss. 1989). Furthermore, VanEtten should be allowed to use the state's argument. That is, the state did not object, protest or make a request for the court to bring the case to trial.
The State next contends that VanEtten "wholly ignore[s]" the continuance order entered at the request of his co-defendant. Moreover, the state asserts that this time cannot be charged to it. VanEtten, however, has discounted this time period and has not charged it to the state and *1320 still has arrived at a number exceeding the 270 day limit. See, supra, pp. 1318-1319. If it is determined that this time period should be charged to the State then this would add to the number of days VanEtten was held without a trial. In support of the contrary proposition, that the state cannot be charged, the appellee relies on three cases.
In Hollis v. Superior Court (People), 165 Cal. App.3d 642, 211 Cal. Rptr. 649, 651 (3 Dist. 1985) citing People v. Teale, 63 Cal.2d 178, 45 Cal. Rptr. 729, 404 P.2d 209 (1965), the court stated "[w]here a continuance is granted to a co-defendant upon good cause, the rights of other jointly charged defendants are generally deemed not to have been prejudiced." In arriving at that conclusion, the court indicated that the district attorney filed an information jointly charging Hollis and three other co-defendants. 211 Cal. Rptr. at 649. Three of the co-defendants moved for a continuance on the ground there was insufficient time for their counsel to prepare for trial.[4] Hollis objected to the continuance and demanded trial. The trial court granted the continuance after Hollis' counsel assured the court that a separate trial was no tactical advantage and disavowed any intention to force severance. Id. 211 Cal. Rptr. at 650. Moreover, the court also indicated that a showing of good cause depends upon the circumstances of the particular case and good cause was established when the co-defendants' counsel stated his reasons for requesting the continuance were because "[his] investigation of the case has not been completed and in addition, there are numerous legal issues to be investigated plus contacting additional witnesses." Id. 211 Cal. Rptr. at 650-51.
The State also relies on People v. Teale, 63 Cal.2d 178, 45 Cal. Rptr. 729, 404 P.2d 209 (1965), rev'd on other grounds, Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The facts of that case indicate that the co-defendants, Teale and Chapman, were tried for various crimes including murder and kidnapping. Id. 45 Cal. Rptr. at 732, 404 P.2d at 212. On the day of trial, the appointed public defender withdrew due to a conflict of interest in his representation of the co-defendants. Id. 45 Cal. Rptr. at 733-34, 404 P.2d at 213-14. He, however, continued to serve as counsel for Teale. Id. Chapman's new counsel instituted discovery proceedings necessitating a continuance. Prior to the new trial date that had been set, Chapman filed an affidavit alleging that the public defender's prior representation of her would be prejudicial if a joint trial were held. Consequently, the trial court allowed the public defender to withdraw as counsel for Teale also. Again a continuance was ordered to allow Teale's new counsel an opportunity to prepare.
On appeal the court found that good cause had been demonstrated requiring a continuance, which forced Chapman to trial after the sixty day period. Forcing a trial before the sixty day period would have sufficiently deprived Teale of adequate representation and a fair trial. Cf. Hollis, supra, 211 Cal. Rptr. at 651 (forcing joint trial of all four defendants within sixty-day period would place at risk the rights of three of them to adequate representation and a fair trial; therefore, continuance was necessary to protect right of co-defendants to adequate representation). Accord. State v. Guloy, 104 Wash.2d 412, 705 P.2d 1182 (1985), cert. denied Guloy v. Washington, 475 U.S. 1020, 106 S.Ct. 1208, 89 L.Ed.2d 321 (1986).
Finally the State relies on People v. Jones, 104 Ill.2d 268, 84 Ill.Dec. 495, 472 N.E.2d 455 (1984). In that case the six defendants were tried and convicted of conspiracy to commit gambling. Id. 84 Ill.Dec. at 497, 472 N.E.2d at 457. Stated briefly, the facts indicate that on June 7, 1982, the state and the defendants answered ready for trial. Id. 84 Ill.Dec. at 503, 472 N.E.2d at 463. Prior to that date, however, the attorney for the defendants was permitted to withdraw as counsel for two of the co-defendants. The following April new counsel *1321 for the co-defendants made an appearance but withdrew as counsel on June 7, 1982. That same day co-defendants' new counsel made an appearance and requested a continuance until August 2, 1982. Id. The court held "[a] defendant can be charged with a continuance occasioned by a co-defendant if he fails to object or fails to move for a severance;" therefore, they could not take advantage of the delay for purposes of computing the time for a speedy trial. In reaching this conclusion, however, the court emphasized that when August 2, 1982, (the re-set trial date), arrived, the defendants joined with the co-defendants in requesting another continuance until August 30, 1982.
The State's reliance on these cases is misplaced. In those cases the courts determined that a co-defendant moving for a continuance demonstrated good cause when he would not have an adequate opportunity to prepare for trial, which would preclude him from having a fair trial. In the case sub judice, good cause was not shown for the continuance granted to Flores.
In this case the order which granted Flores' continuance was entered before the September term of court. Therefore, the operative question becomes, "How long does it or should it take counsel to prepare a motion to dismiss?" Moreover, the record is not clear nor do the briefs indicate whether VanEtten knew of or received notice of the fact that Flores filed this motion. Clearly, the court still could have scheduled the trial before the February term, instead of adding more than four months to the time that VanEtten had to wait for his trial.
When the State indicted VanEtten it had an obligation to bring him to trial without any unnecessary delay. State v. Anthony, 448 A.2d 744, 749 (R.I. 1982). The state must assume that a defendant wants a speedy trial unless the defendant maintains otherwise. Id. at 748. This obligation remains with the state because the defendant has no duty to bring himself to trial. Vickery, 535 So.2d at 1377; see also Commonwealth v. Wysocki, 28 Mass. App. Ct. 45, 546 N.E.2d 177, 180 (1989) quoting Commonwealth v. Edge, 26 Mass. App. Ct. 976, 977, 528 N.E.2d 879 (1988) (a defendant does not become responsible for the delay simply by not requesting a trial date); Biggs v. State, 546 N.E.2d 1271, 1274 (Ind. App. 1 Dist. 1989) (defendant is under no obligation to remind state of its duty).
Moreover, since the right to a speedy trial is a right personal to the accused, the right should not be waived because of delays occasioned by a co-defendant for which the accused was not in any way responsible. People v. Roberts, 133 Ill. App.3d 731, 88 Ill.Dec. 773, 777, 479 N.E.2d 386, 390 (5 Dist. 1985). A co-defendant surely should not be permitted to delay a trial where he has counsel prepared to go to trial but just needs an extra day or so to prepare a motion. Without doubt this motion could have been prepared in a day. The delay in the case sub judice is far more serious when the co-defendant is given over four months to draft a motion. More importantly, however, this Court can neither assume that VanEtten waived his right to a speedy trial nor can it presume he acquiesced in the loss of that right. Vickery, 535 So.2d at 1377 (citations omitted).
Therefore, when these days are added to the number of days that the State had already allowed to pass, it is beyond a doubt that the State violated its statutory obligation under § 99-17-1. This statute commands that the state bring a defendant to trial within 270 days, and it allows for very little, if any, wiggle room.
Constitutional Guarantee to Speedy Trial
Assuming arguendo the State met its statutory obligation, it does not necessarily mean that VanEtten's constitutional right to a speedy trial has been respected. Smith v. State, 550 So.2d 406, 408 (Miss. 1989). Unlike the statutory right, the constitutional right to a speedy trial attaches at the time that a person is arrested or when an indictment or information has been filed. Perry v. State, 419 So.2d 194, 198 (Miss. 1982). In short, the constitutional right to a speedy trial attaches when a person has been accused. *1322 See, Beavers v. State, 498 So.2d 788, 789-90 (Miss. 1986).
In Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), the U.S. Supreme Court held that the Sixth Amendment right to a speedy trial applies to the states through the 14th Amendment. It was not until Barker v. Wingo, however, that the Court announced that where the right has attached a balancing test must be applied to determine whether the right to speedy trial has been denied. 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). This Court adopted the Barker test in Wells v. State, 288 So.2d 860 (Miss. 1974).
The Barker Court identified four factors which are to be considered in making such a determination: (1) the length of delay; (2) the reason for delay; (3) whether the defendant has asserted his right to a speedy trial; and (4) whether the defendant has been prejudiced by the delay. No one of the factors is, in itself, dispositive. Rather, they must be considered together in light of all the circumstances. Smith, 550 So.2d at 408 citing Barker, 407 U.S. at 533, 92 S.Ct. at 2193; see also Trotter v. State, 554 So.2d 313, 316 (Miss. 1989). Now, turning to the factors.

Length of Delay
This factor is the triggering mechanism. The State concedes that it was at least 610 days from the date of indictment to the date of trial. Seven months delay is enough to cause further inquiry into the other factors. See, Smith, 550 So.2d at 408 citing Blake v. Katter, 693 F.2d 677, 681-82 (7th Cir.1982). Furthermore, any delay of eight months or longer is presumptively prejudicial. Smith, 550 So.2d at 408 (citations omitted). Therefore, the delay in the case sub judice must be weighed heavily in favor of VanEtten in the balancing test analysis.

Reason for Delay
From our calculation explained at pp. 1318-1319, 1321-1322, supra, which excludes the continuance granted to the defendant, VanEtten was tried more than 290 days after he was arraigned. If one were to add the number of days that elapsed between the time he was indicted and arraigned, the total number of days increases to 303. Moreover, when the days for Flores' continuance granted on September 4, 1985, which delayed the trial until February 18, are added to this, the number surges to 469 days. When thirty-one days are deducted because VanEtten moved for a continuance, though there is nothing in the record which proves that the court granted it, the total number of days that elapsed equals 438.
In Perry v. State, this Court stated:
Where the defendant has not caused the delay, and where the prosecution has declined to show good cause for the delay, we must weigh this factor against the prosecution. It is the burden of the state to see that a defendant receives a speedy trial.
419 So.2d at 199; see also, Vickery, 535 So.2d at 1377; Trotter, 554 So.2d at 317.
The state contends that where the record is silent to orders granting continuances, the defendant should be responsible for the delays. This proposition has been refuted sufficiently, and it appears that this time must tick against the state. Vickery, 535 So.2d at 1375. In addition, the State argues that when a co-defendant causes the delay without objection or demand for severance by the defendant, the defendant cannot complain of the delay.
In response, VanEtten did file a motion for severance as early as July 10, 1984. There is no indication, however, that this motion was denied before September 16, 1985. Secondly, there has been no showing that VanEtten knew that Flores had moved for a continuance. Whether he knew about it or not, VanEtten should not be charged with the actions of his co-defendant. His right to speedy trial should not be denied in such a casual manner. Even subtracting this delay, as well as those attributable to VanEtten, it still is obvious that the State is to blame for most of the delay. Consequently, this factor weighs in Van Etten's favor.

*1323 Defendant's Assertion of His Right to a Speedy Trial

As early as June 21, 1985, VanEtten filed a motion to Dismiss for Failure to comply with the 270 day rule. At that time, however, the State had not violated the rule because it had been granted a continuance. Now the state argues "[t]he point is, on June 21, 11985, [sic], VanEtten demanded dismissal, not a speedy trial." Brief of Appellee at 11 (emphasis in original). In addition, the State contends that VanEtten was not interested in a speedy trial because he himself would later move for a continuance. Id.
With this argument the State is putting the responsibility on the defendant to request a trial. That duty is always on the state. Moreover, in his pretrial motions on the day of trial VanEtten moved to dismiss on the speedy trial violation. As has been repeated throughout this opinion, a defendant may have some responsibility to assert his speedy trial claim, but the primary burden is on the courts and the prosecutors to assure that cases are brought to trial. Trotter, 554 So.2d at 317. Furthermore, VanEtten's failure to consistently badger the prosecution to proceed with his trial should not eliminate his claim that he was denied a speedy trial. Smith, 550 So.2d at 408. Consequently, his failure to assert his right to speedy trial should be weighed against him only lightly, if at all. Trotter, 554 So.2d at 317.

Prejudice
In Trotter, 554 So.2d at 318, this Court adopted the following language:
Inordinate delay, wholly aside from possible prejudice to a defense on the merits, may `seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety, in him, his family and his friends.' United States v. Marion, 404 U.S. 307, 320 [, 92 S.Ct. 455, 463, 30 L.Ed.2d 468] (1971). These factors are more serious for some than for others, but they are inevitably present in every case to some extent .. .
See Moore v. Arizona, 414 U.S. 25, 26-7, 94 S.Ct. 188, 189-90, 38 L.Ed.2d 183 (1973) (quoting Barker, 407 U.S. at 537, 92 S.Ct. at 2195 (White, J., concurring)); accord, Harvey, 774 P.2d at 97. Moreover, it is clear that an affirmative showing of prejudice is not necessary in order to prove a denial of the constitutional right to a speedy trial. Trotter, 554 So.2d at 318 (citations omitted). VanEtten asserts that the delay prejudiced him because it resulted in the absence of a co-defendant (Migel) and the witnesses' memories must have dimmed. This was exceedingly important, according to VanEtten, because date of the conspiracy was consequential.
The right to a speedy trial means what it says. The duty of a defendant to request a trial is less than the duty on the state to bring the trial forward. The right itself is "intricately related to the needs of well ordered society," for example, inter alia,
[d]efendants who are not bailed must spend `dead' time in local jails exposed to conditions destructive of human character. For those who are eventually found innocent, their potential to be contributing members of society through any kind of employment is lost during pre-trial incarceration. On the other hand, the possibility of rehabilitating those who are eventually found guilty is diminished since correction procedures cannot be started until after trial. These productive conditions are achieved at a great financial expense to society.
Harvey v. State, 774 P.2d 87, 102 (Wyo. 1989) (Urbigkit, J., specially concurring) (quoting Note, Speedy Trial, Recent Developments Concerning a Vital Right, 4 Ford.Urb.L.J. 351, 353 (1976)).

Balancing
The only Barker factor that does not favor VanEtten is that he did not aggressively assert his right to a speedy trial. All the other Barker factors weigh in his favor. Therefore, VanEtten was denied his constitutional right to a speedy trial. See, Smith, 550 So.2d at 409.
*1324 In conclusion, we must do what we are required to do by this State's Constitution and the United States Constitution. As of this day, because he was denied his statutory and constitutional rights to a speedy trial, James Ray VanEtten's conviction must be reversed and rendered, and he is discharged.
REVERSED, RENDERED AND DEFENDANT DISCHARGED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
NOTES
[1] Flores also testified during the trial. Of course his testimony indicated that he was in no way involved in a conspiracy. The gist of his defense was that he had borrowed $6,000 from a bank to buy a truck, presumably an 18-wheeler. He just happened to run into Migel, a person he had known for a long time, at a bar in Houston. Migel informed Flores that he knew where he could get a truck in Lake Providence, Louisiana, however, Migel was returning to Jackson. Instead of riding with Migel to Jackson or Lake Providence, Flores flew to Jackson the following night. That night Layton and Migel picked up Flores from the airport, and they went to Layton's home.

While Flores was at Layton's he only saw VanEtten come to the house once. Layton, his wife, Flores and Migel subsequently went to Lake Providence to look at the truck that Migel had informed him about. They were arrested the night they returned to Edwards.
In explaining why he had this $6,000+ in cash in his pocket, Flores explained that the bank gave him a cash loan in 100's and 20's. He had borrowed this money in January or February and since that time he was looking for a truck. During this time he was doing little or no work. When he made payment on this loan, he paid them with cash, but he did not know when he began the payments. Moreover, he assured the jury that the money did not come from the sale of marijuana. As a matter of fact, he did not know that marijuana was in the house, and he never saw anyone come to purchase any. Finally, he denied having met with VanEtten in Texas.
VanEtten also took the stand and denied the conspiracy. He testified that he met Flores and Migel for the first time at Layton's house. He stated that he only met them because he was taking his car to Layton's house because Layton indicated that his friend, Migel, who was working on his van, could fix Layton's car as well. He denied ever going to Texas with Layton, selling or dealing marijuana or entering an agreement to buy any. He, however, did say that he smoked some marijuana when he was at Layton's. Moreover, he indicated that he had no problem with people selling or smoking marijuana. Finally, he had this to say about criminals:
I've been there whenever I've seen folks stab ice picks in folks' eyes for snitching on somebody at nighttime ... I ain't got nothing to do with snitches. I ain't got nothing for one, and I ain't gonna have nothing to do with one in the future, and won't do nothing to one because I don't want nothing to do with one ...
[2] Just in case anyone is wondering what happened to Migel Garza he skipped bond  apparently, never to be seen again.
[3] Of course if this is the case then these thirty-one days must be added to the delay; thereby bringing the total to 267 days.
[4] Incidentally the district attorney was obligated to bring them to trial within sixty days of the indictment. Id. 211 Cal. Rptr. at 649.