# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-KA-00427-SCT

*ARETHA L. SIMMONS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 4/10/92 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID M. RATCLIFF |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT T. ALLRED, III |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 6/27/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/18/96 |

EN BANC.

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Aretha Simmons was convicted on April 10, 1992, in the Circuit Court of the Second Judicial District of Jones County of capital murder of her one-year old child while engaged in the commission of felonious abuse and/or battery of a child pursuant to Miss. Code Ann. § 99-17-1 (Supp. 1976). The jury determined that she should be sentenced to life imprisonment and the trial court entered judgment. On April 17, 1992, the trial court denied her post-trial motions. Aggrieved, Simmons appeals to this Court raising four issues, three of which are without merit.

¶2. Only the issue of speedy trial violation under the Sixth Amendment of the United States Constitution and Miss. Code Ann. § 99-17-1 is worthy of discussion. After thorough consideration, we find no violation of Simmons' statutory or constitutional right to a speedy trial. We must affirm Simmons' conviction for the capital murder of her son.

## FACTS

¶3. Aretha L. Simmons, [hereinafter Simmons], along with her boyfriend, Johnny Newell and her three children, one of whom was one-year-old Maurice Hakeen Simmons [hereinafter Maurice], lived

in a government housing project in Laurel.

¶4. During the evening hours of June 23, 1990, Simmons attended a party outside her home, but left prior to its ending. Newell discovered the "cold" body of Maurice when he returned home from the party. He then awakened Simmons, told her that something was wrong with the child. Simmons dialed 911 from a neighbor's house.

¶5. The autopsy revealed the nature and extent of the child's injuries and cause of death to be blunt force trauma, with extensive bruising of internal organs and the large bowel had been torn in half. The injuries ruled out accident as the cause of death, and the injuries could not have been inflicted by a child.

¶6. Initially, the police regarded both Simmons and Newell as suspects. Both were asked to come to the police station the following morning. Simmons accused Newell of beating the child, ultimately causing his death. Both parties were released without charges being filed. Later, the police decided to question both parties further.

¶7. On June 26, 1990, after the burial of Maurice, police asked Simmons and Newell to again come to the Laurel Police Department. Simmons confessed to killing Maurice, resulting in her indictment and conviction of capital murder while engaged in the commission of felonious abuse and/or battery of a child. The appeal to this Court followed.

## DISCUSSION OF LAW

### WHETHER DEFENDANT WAS DENIED A SPEEDY TRIAL?

### A. STATUTORY RIGHT TO A SPEEDY TRIAL

¶8. Simmons was arraigned on January 22, 1991, and tried on April 6, 1992. In considering whether the 270 day rule was violated, for purposes of § 99-17-1, the total time between arraignment and trial was 439 days. There were three continuances granted, one formal, where a written order of continuance was filed on August 7, 1991. Two other de facto continuances were granted and *agreed to by the defense in open court.* All three of these continuances were for good cause shown: the first, from the original trial date of April 8, 1991, was at Simmons' request to permit a psychiatric or psychological examination; the second, on August 7, 1991, was for the purpose of having Simmons examined by the Mississippi State Hospital; the third, on February 18, 1992, was to allow the defense time for trial preparation.

¶9. Simmons' case was set for trial on April 8, 1991. At a March 29, 1991, status hearing, the State requested to be advised by the defense of any matters which would interfere with the trial date setting, to which the defense advised a motion for psychological or psychiatric examination would be forthcoming. While no formal order was entered, it is clear that the purpose of the March 29th hearing was to determine whether the defense was ready to go to trial so that the State would know whether to issue its subpoenas. The defense was informing the State and the trial court that as of March 29th, the case could not go to trial on April 8th as scheduled.

¶10. In *Arnett v. State*, 532 So. 2d 1003 (Miss. 1988), where trial had been set for May 20th and on that day trial was re-set until August 26th, and no continuance order was entered, this Court held that

the time should not be counted toward the allotted 270 days:

> There is no written order granting a continuance until the August term, but rather an oral agreement between the attorneys and the judge as to such. Not only did the defendant not object to this, he initially requested that he be allowed time in which to complete other discovery. . . . [O]n May 20 the case was reset until August 26, 1985. Because the defense counsel actively participated in this resetting which was beneficial to his case, and because he failed to state any objection to the resetting, the statute remained tolled until August 26, 1985.

*Arnett,* 352 So. 2d 1010-11. *See also **Reed v. State***, 506 So. 2d 277 (Miss. 1987) (where again there was no formal order of continuance sought by either party or entered by the trial court, nevertheless, this Court held no violation of § 99-17-1). The ***Reed*** Court stated, "In the instant case, the State never sought a continuance throughout the plea negotiations. However, it is equally clear that Reed acquiesced in and initiated much of the plea bargaining that caused the resulting delay. If the defendant is the cause of the delay, he cannot complain thereafter." ***Reed****,* 506 So. 2d at 281. *See also **McGhee v. State***, 657 So. 2d 799 (Miss. 1995) (where trial court's failure to enter agreed order resetting trial date was of little consequence in determining whether defendant's statutory right to speedy trial was violated, and where record clearly indicated that trial setting was agreed to by both state and defendant).

¶11. A continuance was therefore in effect from April 8th until the next term of court which was May 20th, a period of 42 days having elapsed. From August 7th until the psychological report was filed on November 22nd, a period of 107 days was tolled by the continuance order. A total of 89 days elapsed from November 22nd until the next term of court when Simmons' motion to dismiss came before the court.

¶12. The total elapsed time between arraignment on January 22, 1991, and the April 6, 1992 trial was 439 days. Deducted from this total should be 42 days from April 8th until May 20th, and 107 days from August 7th until November 22nd, and 89 days from November 22nd till the motion to dismiss, which amounts to 201 days, well within the 270-day statutory rule. We hold that there was no violation of § 99-17-1.

## B. CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL

¶13. Simmons' constitutional right to a speedy trial attached at the time of arrest. ***Smith v. State***, 550 So. 2d 406, 408 (Miss. 1989). Once the right attaches, this Court will follow the test established by the United States Supreme Court in ***Barker v. Wingo***, 407 U.S. 514, 515 (1972), to determine whether there has been a violation of a defendant's right to a speedy trial. The right exists separately from the statutory right. ***Bailey v. State***, 463 So. 2d 1059, 1062 (Miss. 1985).

¶14. ***Barker*** set out a balancing test, delineating four factors to be weighed. Yet, no one factor alone is dispositive. ***Bailey***, 463 So. 2d at 1062. The factors must be considered individually, assessed both objectively and dispassionately, then weighed and balanced together. ***Flores v. State***, 574 So. 2d 1314, 1322 (Miss. 1990).

### 1. Length of the Delay.

¶15. Applying the four-part analysis set out in **Barker**, we now commence examination of the case at bar. The first **Barker** factor operates as the "triggering mechanism." **Smith v. State**, 550 So. 2d 406, 408 (Miss. 1989). We must calculate the delay from the date of arrest. This Court, in **Smith**, held "that any delay of eight (8) months or longer is presumptively prejudicial." 550 So. 2d at 408. The twenty-one month delay between arrest on June 27, 1990, and trial on April 6, 1992, was presumptively prejudicial and triggers the **Barker** analysis.

## 2. Reason for the Delay.

¶16. It is more than apparent that a sizable portion of the delay was brought about due to the request by Simmons for a psychological evaluation. Simmons just believed that she had an absolute right not to be examined by the doctors at Whitfield. Simmons viewed those doctors to be agents of the State. Simmons failed to cite authority or argument in support of such contention. Therefore she should be procedurally barred on this issue, same having been abandoned. **Thibodeaux v. State**, 652 So. 2d 153, 155 (Miss. 1995) (citing **Pate v. State**, 419 So. 2d 1324, 1325-26 (Miss. 1982)).

¶17. Even considering it alternatively on the merits, we find the issue without any merit. This Court has held in **Lentz v. State**, 604 So. 2d 243, 247 (Miss. 1992), that where the defendant "was examined by personnel at the Mississippi State Hospital in Whitfield, [she] was afforded her constitutional rights in regard to her state of mind and competency to stand trial." The **Lentz** Court refused to appoint an additional expert, thus this issue has already been decided. In the case *sub judice*, however, the trial judge went further than this Court's pronouncement in **Lentz**, by stating his willingness to possibly appoint an additional doctor, depending upon what the doctors at Whitfield found.

¶18. There was a delay between the trial judge's directive to the State to file its own motion and the time when the State complied, but the delay was minute as to any constitutional violation of Simmons' right to a speedy trial. A case practically on all-fours with Simmons' case is **Brady v. State**, 425 So. 2d 1347 (Miss. 1983). In **Brady** there was a dely of several months between the order granting Brady's motion for a psychiatric examination, which was not complied with, necessitating a subsequent motion filed by the State for such examination, and the actual trial. In the case at bar, as in **Brady**, the State moved for a continuance to have a defendant examined. Here also, there existed a de facto continuance granted by agreement of the State and Simmons at the March 29th hearing. We do not find that this factor weighs heavily against the State, but rather, under the totality of all facts, it weighs slightly in favor of Simmons.

## 3. Assertion of right to a speedy trial.

¶19. Although Simmons has no duty to bring herself to trial, nevertheless, the record is replete with numerous instances of motions, argument, and discussions by the State and Simmons concerning trial settings and matters that affected the setting date. The record is also replete with frequent agreements or acquiescence in various delays in trial. In **McGhee v. State**, 657 So. 2d 799, 804 (Miss. 1995), this Court stated:

> It is not the duty of the accused to bring himself to trial. **Kinzey v. State**, 498 So. 2d 814, 823 (Miss. 1986). It is the State, of course, that bears the burden of bringing an accused to trial in a speedy manner. **Magnusen**, at 1283 (citing **Vickery v. State**, 535 So. 2d 1371, 1377 (Miss.

1988)).

¶20. While a defendant may have some responsibility to assert a speedy trial claim, the primary burden is on the courts and the prosecutors to assure that they bring cases to trial. *Flores v. State*, 574 So. 2d 1314, 1323 (Miss. 1990). In *State v. Davis*, 382 So. 2d 1095 (Miss. 1980), wherein Davis waited until the day of trial to file his motions, this Court noted:

> A majority of the cases hold that by failing to demand a trial, or by failing to make some effort to procure a speedier trial than that actually accorded to him by the state, accused waives his right to trial within the period prescribed by the statute, this being particularly true when accused is on bail.

*Davis*, 382 So. 2d at 1098. In *McGhee*, the defendant only raised his motion to dismiss two months prior to the actual trial. *McGhee*, 657 So. 2d at 804. Simmons, however, failed to file a motion to dismiss until after one year. Thus, this factor favors the State, but only slightly because the "primary" burden is upon the State.

### 4. Whether the defendant has been prejudiced?

¶21. Finally, concerning the issue of prejudice, Simmons has failed to demonstrate any prejudice whatsoever. Without a showing of prejudice Simmons cannot make out a claim of a due process violation. *United States v. Antoine,* 906 F.2d 1379 (9th Cir.), *cert. denied*, 498 U.S. 963 (1990). This factor weighs heavily against Simmons and in favor of the State. Nor do we find any argument that Simmons' defense has been curtailed or impaired because of any delay. As this Court stated in *State v. Magnusen*, 646 So. 2d 1275, 1285 (Miss. 1994), "we will not infer prejudice to the defense out of the 'clear blue.'" Under the totality of the *Barker* factors, weighed and considered together, we hold that the balance is struck in favor of the State. There is no merit to Simmons' claim of denial of a constitutional right to a speedy trial.

## CONCLUSION

¶22. Simmons has made no showing that her statutory or constitutional right to a speedy trial was violated. Deductions of the time periods granted for good cause shown reveals that Simmons was in fact tried within 270 days from arraignment, hence no violation of the statutory right to a speedy trial. Applying the *Barker* analysis, considering and weighing the four factors, the balance is struck in favor of the State. Simmons' constitutional speedy trial right was not violated. We must affirm the trial court.

¶23. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT AFFIRMED.**

**LEE, C.J., PRATHER, P.J., PITTMAN, BANKS, ROBERTS AND MILLS, JJ., CONCUR. SULLIVAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, J.**

**SULLIVAN, PRESIDING JUSTICE, DISSENTING:**

¶24. This Court is again faced with a defendant's right to a speedy trial under the Sixth Amendment of the United States Constitution and Mississippi Code Annotated § 99-17-1. Because I again disagree with the majority that Simmons' right to a speedy trial has not been violated, I must dissent.

## CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL

¶25. The Sixth Amendment to the United States Constitution and Article 3, § 26 of the Mississippi Constitution of 1890 guarantees that "[i]n all criminal prosecutions the accused shall have a right to . . . a speedy and public trial." The constitutional guarantee to a speedy trial attaches at the time an accused is arrested. *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989); *Bailey v. State*, 463 So. 2d 1059, 1062 (Miss. 1985); *Perry v. State*, 419 So. 2d 194, 198 (Miss. 1982). This right exists separately from the statutory right to a speedy trial. *Bailey*, 463 So. 2d at 1062; *Perry*, 419 So. 2d at 198. Once this right has attached, this Court follows the four part analysis laid out by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 515 (1972), for the determination of a violation of the right to a speedy trial.

¶26. The factors set out by the United States Supreme Court are: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant has been prejudiced by the delay. *Barker*, 407 U.S. at 533. No one factor is, in and of itself, dispositive. *Bailey*, 463 So. 2d at 1062. Rather, the factors must be considered and assessed, objectively and dispassionately, then weighed and balanced together. *Flores v. State*, 574 So. 2d 1314, 1322 (Miss. 1990); *Trotter v. State*, 554 So. 2d 313, 316 (Miss. 1989); *Kinzey v. State*, 498 So. 2d 814, 816 (Miss. 1986).

¶27. Because this is a speedy trial issue and the majority finds that Simmons' right to a speedy trial was not violated, I will provide a chronology as I see it:

## CHRONOLOGY OF EVENTS

Date Event Speedy Trial Clock Const'l Statutory

06/24/90 Commission of the Crime 0 0

06/27/90 Arrest 0 0

**Clock running**

**154 days**.

11/27/90 Filing of Indictment 154 0

**Clock running**

**56 days**.

01/22/91 Arraignment 210 0

**Clock running**

**15 days**.

02/06/91 Order setting trial date for 04/08/91 225 15

**Clock running**

**51 days**.

03/29/91 Hearing: Defense counsel announces he will

file motion for private psychiatric exam. 276 66

**Clock running 10 days**.

04/08/91 Original trial setting 286 76

**Clock tolled**

**3 days.**

04/11/91 Defendant filed motion for psychiatric exam 289 76

**Clock tolled**

**16 days**.

04/27/91 Hearing: Argument as to evaluation of

Simmons at Whitfield, judge reserves ruling

until evaluation. 305 76

**Clock running**

**102 days**.

08/07/91 State's motion for psychiatric exam -

**Continuance** granted by Court. 407 178

**Clock tolled**

**107 days**.

11/22/91 Filing of psychiatric Evaluation Report 514 178

**Clock running**

**66 days**.

1/27/92 Order appointing additional counsel 580 244

**Clock running**

**2 days**.

01/29/92 Motion to dismiss filed (Speedy Trial) 582 246

**Clock running**

**20 days**.

02/18/92 Hearing: Motion to dismiss (Speedy Trial)

Court denied. 602 266

**Clock running 34 days**.[1]

03/23/92 Hearing: Motion to dismiss (Speedy Trial)

Court denied and Trial Setting. 636 300

**Clock running**

**14 days**.

04/06/92 Simmons went to trial and four days later was

convicted of capital murder and sentenced to

life in prison. **650 314**

### 1. Length of the Delay

¶28. For Simmons the time between arrest and trial was **six hundred fifty days**, a period of approximately **twenty-one months**. This Court in *Smith v. State*, 550 So. 2d 406 (Miss. 1989), held "that any delay of eight (8) months or longer is presumptively prejudicial." *Id.* at 408.

¶29. It is also important to note that there was a period of two hundred ten days, more than six and one-half months, from the arrest to the arraignment. Nowhere in the record or in the brief for the State is a reason given for this substantial delay. In *Handley v. State*, 574 So. 2d 671 (Miss. 1990), the Court held that where the record is silent, we count the time against the State. *Id.* at 674 (citing *Vickery v. State*, 535 So. 2d 1371, 1375, 1377 (Miss. 1988)). So, for Simmons, a six-hundred-fifty-day delay is presumptively prejudicial, and inquiry into the other *Barker* factors is required. I would hold that this factor weighs heavily against the State.

### 2. Reason for the delay

¶30. "The state bears the risk of nonpersuasion regarding the reasons for delay and must show either that the defendant caused the delay or that good cause existed for the delay." *Fleming v. State*, 604 So. 2d 280, 299 (Miss. 1992) (citing *Wiley v. State*, 582 So. 2d 1008, 1012 (Miss. 1991)). "[S]ince the state bears the risk of nonpersuasion, even a 'neutral' reason for delay must weigh against the

state, albeit lightly." *Fleming*, 604 So. 2d at 299.

¶31. Here there was only one formal continuance entered by the trial court, which tolled the statutory clock for one hundred seven days. The State urges that they showed other good reasons for the delay in that informal, mutually agreed upon continuances were assented to by the parties. However, as the record of the lower court's proceedings show, one such continuance was in fact asked for by the State and was not formally entered by the lower court. This did not toll the clock.

¶32. Since Simmons only caused one short delay of nineteen days and the prosecution failed to show good cause for delay other than the one formal continuance of one hundred seven days, this Court must weigh such factors against the prosecution in determining whether the defendant has been denied her constitutional right to a speedy trial. *Perry v. State*, 419 So. 2d 197, 199 (Miss. 1982). Where the defendant has not caused the delay, and where the prosecution has declined to show good cause for the delay, we must weigh this factor heavily against the prosecution. *Bailey v. State*, 463 So. 2d 1059, 1062 (Miss. 1985). I would hold this factor weighs heavily against the State.

### 3. Whether the defendant asserted her right to a speedy trial

¶33. Simmons twice filed motions seeking her right to a speedy trial. On February 18, 1992, five hundred seventy-nine days after arrest, the trial court denied Simmons' motion to dismiss. Also, on March 23, 1992, six hundred twenty-eight days after arrest, Simmons again moved to dismiss the case based on her right to a speedy trial. The trial court denied both of Simmons' motions. The trial judge did not state why he denied the defendant's motion.

¶34. A defendant may have some responsibility to assert her speedy trial claim, but the primary burden is on the courts and the prosecutors to assure that they bring cases to trial. *Flores v. State*, 574 So. 2d 1314, 1323 (Miss. 1990); *Trotter v. State*, 554 So. 2d 313, 317 (Miss. 1989). "The duty of a defendant to request a trial is less than the duty on the state to bring the trial forward." *Flores*, 574 So. 2d at 1323. Since Simmons did not file her motion to dismiss until well over a year, this factor favors the State, albeit lightly because the ultimate burden falls on the State's shoulders.

### 4. Whether the defendant has been prejudiced by the delay

¶35. The United States Supreme Court has recognized that there is a "real possibility of prejudice inherent in any extended delay: that memories will dim . . . ." and other prejudices will arise toward the defendant. *United States v. Marion*, 404 U.S. 307, 325 (1971). The record is replete with references to the prejudice that Simmons encountered because of the length of delay from arrest to the trial date. Below are just a few examples of prejudice inflicted upon Simmons found in the record of the trial court.

¶36. The defense elicited this information from the prosecution's witness, Ms. Dowden, an EMT who answered the 911 call, in the following exchange:

> **Q.** Did you get in fairly close proximity to him?
>
> . . .
>
> **A.** [I]t's been two years ago and I could not point him out to you if you asked me. I am sorry,

but I couldn't. And I respond to a lot of calls, and you forget. I'm sorry.

**Q.** Would you be in a better position?

**A.** Certainly, it would have been fresher in my mind.

The next exchange during the trial showed the failing memory of Officer Ramsey. This officer was the one who took the confession of Aretha L. Simmons.

**Q.** Well, would your memory be better if it had not been two years ago?

**A.** Well, I am sure it would.

The next excerpt was also elicited from Officer Ramsey:

**Q.** Would it probably have been easier to recall if this had been tried -- because it has been two years, is it harder to recall these facts?

**A.** Yes, sir.

**Q.** And that affects your ability to tell us what happened, doesn't it?

**A.** On some details, I am sure it would.

**Q.** I asked you the question, is your memory affected because of the time frame?

**A.** I am sure it is for some things.

¶37. This Court has held that once the defendant has passed the threshold of presumptive prejudice, the burden falls on the State to disprove that prejudice. *Ferguson v. State*, 576 So. 2d 1252, 1255 (Miss. 1991). The State has wholly failed to rebut what this Court is obligated to presume, that Simmons in fact suffered prejudice. The State merely put forth a sentence in its brief stating that they had not prejudiced Simmons, nothing more. I would hold that this factor favors Simmons.

¶38. The only *Barker* factor that does not favor Simmons is that she did not assert her right to a speedy trial in a timely manner. However, in balancing the four *Barker* factors in light of all of the circumstances, three of the four factors weigh heavily in Simmons' favor that she was denied her constitutional right to a speedy trial.

¶39. "When a defendant's constitutional right to a speedy trial has been violated, the sole remedy is to reverse the conviction and dismiss the charges." *Bailey v. State*, 463 So. 2d 1059, 1064 (Miss. 1985) (citing *Strunk v. United States*, 412 U.S. 434 (1973); *Perry v. State*, 419 So. 2d 197 (Miss. 1988); *Turner v. State*, 383 So. 2d 489 (Miss. 1980)). This Court has determined that the only remedy for violation of an appellant's constitutional right to a speedy trial is discharge. *Trotter v. State*, 554 So. 2d 313 (Miss. 1989); *Smith v. State*, 550 So. 2d 406 (Miss. 1989).

## STATUTORY RIGHT TO A SPEEDY TRIAL

¶40. The record shows that four hundred forty days elapsed between Simmons' arraignment and trial.[2] Our speedy trial statute, Mississippi Code Annotated § 99-17-1, is clear, it states "[u]nless

good cause is shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." We have interpreted this statute as clear and unambiguous. *Lightsey v. State*, 493 So. 2d 375 (Miss. 1986). "The state bears the burden of bringing to trial one charged with crime within the time prescribed by statute or showing good reason for failure to comply with the statute." *Turner*, 383 So. 2d at 491.

¶41. The statutory right to a speedy trial attaches and time begins running after the accused has been arraigned. Miss. Code Ann. § 99-17-1. In calculating the statutory time, we do not include the date of arraignment, but do include the date of trial and weekends, unless the last day of the two-hundred-seventy-day period falls on Sunday. *Ransom v. State*, 435 So. 2d 1169, 1169-70 (Miss. 1983). In this case the time from Simmons' arraignment until the first day of trial was four hundred forty days. Since this delay is obviously over the statutory limit of two hundred seventy, the burden falls upon the State to show "good reason for failure to comply with the statute." *Turner*, 383 So. 2d at 491.

¶42. The State put forth several reasons for the delay. First, the State asserted that defendant's attorney notified the lower court that he would be moving for an individual private psychiatric examination; however, the defendant did not file in a timely manner, and the initial trial date was missed. In *Reed v. State*, 506 So. 2d 277 (Miss. 1987), the Court noted that "[a]pparently, . . . the initial trial date passed because the trial court had failed to resolve certain pretrial motions that were filed." *Id.* at 281. The State submits that there was a de facto continuance of the case from the April 8, 1991, trial date, by agreement between the parties, that the defense sought this continuance, and that good cause existed and was shown for this continuance. Nowhere in the record does it reflect why the original date was missed, but a motion was stamped filed by Simmons' attorney on April 11, 1991, three days after the original trial date.

¶43. Although the clock was tolled at the original day of the trial, the majority does not start the clock until the next term of court, which was May 20th. However, Simmons filed the motion for an independent psychiatric evaluation only three days after the original trial court date. In fact, a hearing was held on this motion filed by Simmons on April 27, 1991. So, Simmons was prepared to continue on this date. Thus, I would start the clock running on April 27, 1991, not the date urged by the State, and agreed to by the majority. I would toll the clock for nineteen days. The statutory clock had run seventy-six days before this delay.

¶44. The next factor, which tolled the two-hundred-seventy-day clock, was a continuance granted by the trial court. Before the original trial date, the defense advised the trial court and the State that they would file a motion to have Simmons examined. When the lower court called up the motion for a hearing, defense counsel indicated that he preferred that Simmons be examined by a doctor other than the ones at Whitfield, on the theory that the doctors at Whitfield are State agents. The trial judge's response, in effect, was that he would regard the defendant's motion as a motion for examination of Simmons by a doctor other than the doctors at Whitfield but that he wanted Simmons to be examined at Whitfield first. So, on April 11, 1991, the trial court judge decided that the State should first file a motion for an examination at the Mississippi State Hospital at Whitfield and if the findings were not what Simmons wanted then the trial judge would then entertain a motion for an independent examination. At this hearing, Simmons certainly did not agree to a continuance, so I find it unconvincing that the majority finds this a de facto continuance. The State did not file this motion

until **one hundred two days** after the judge asked for this motion. I would find the delay of the State by not filing the requisite motion for a psychiatric examination for one hundred two days is egregious, unlike the majority who finds this delay "minute." When the State did file the motion for an examination the lower court granted a continuance until the examination was complete.

¶45. The clock ran until the State filed its motion and upon such time the clock was tolled. The time that elapsed between April 27, 1991, and the date which the State filed its motion was one hundred two days. When the State finally entered its motion for an examination and continuance ordered by the court the clock was tolled for a period of one hundred seven days and when the State filed the psychiatric evaluation report on November 22, 1991, the clock was started again.

¶46. The next delay which the majority finds tolled the clock is what the State and the majority call a mutually agreed upon continuance by both parties. The majority asserts that this "agreement" occurred after Simmons' motion for dismissal on February 18, 1992. However, nowhere in the record does Simmons ask for more time, in fact it is the State which asks for more time. The pertinent part of the record states:

> **Ms. Pacific** (District Attorney): *Judge, why don't we carry it over to the 23rd which will be the 1st day of the next term*?
>
> **The Court**: The 23rd of March?
>
> **Mr. Butts** (Attorney for the defense): All right, sir.
>
> **Ms. Pacific**: *That will give us some time*.
>
> **The Court**: I just want to get it set for trial. If you all want to make a motion for continuance that's fine. I just want to keep everything on the record straight.
>
> **Mr. Clark**: Our motions will be other types of motions.

(Emphasis added).

¶47. It is quite clear that it was the State who asked for the extra time and no motions for a continuance can be found in the record; however, the majority finds that this is a mutually agreed upon continuance. It is clear that the defense merely acquiesced when the trial judge informed him of the time, and later stated that the defense would not be filing a motion for continuance. It is important to note that this transaction took place immediately after the defendant's motion to dismiss for failure to comply with the two-hundred-seventy-day statute, Mississippi Code Annotated § 99-17-1, and under the Sixth Amendment of the Constitution.

¶48. It is the State that bears the burden of bringing the accused to trial in a speedy fashion. *Perry v. State*, 419 So. 2d 194, 199 (Miss. 1982); *Vickery v. State*, 535 So. 2d 1371, 1377 (Miss. 1988). Because it was the State that asked for the continuance and no good cause was shown, the clock never stopped after the filing of a psychiatric evaluation report on November 22, 1991. The time between that date and the first day of trial was one hundred thirty-six days. The total time between the arraignment minus the continuance granted by the lower court and the defendant's delay was three hundred fourteen days. This is **well over** the statutory limits as set out in Mississippi Code

Annotated § 99-17-1.

¶49. The two-hundred-seventy-day statute, does not contemplate a showing of prejudice to the defendant's ability to defend herself before the indictment is dismissed with prejudice. However, as recently as the case of *Jasso v. State*, 655 So. 2d 30 (Miss. 1995), and the case of *State v. Harrison*, 648 So. 2d 66 (Miss. 1994), this Court has, on its own volition, added the requirement that an accused must show prejudice before she may effectively argue that her statutory right to a speedy trial has been violated. The majority states that Simmons failed to demonstrate any prejudice whatsoever. Prejudice was shown by Simmons by the relevant portions of the trial record included in this dissent. Also, is not being confined in a jail for six hundred fifty days prejudicial? If jail time is not considered prejudicial to this Court, then why do we sentence criminals to jail when they are convicted of a crime? The requirement that the accused show any other form of prejudice, besides the serving of jail time, defies all logic.

¶50. It follows that if the period of two hundred seventy days is exceeded, the State may not bring the defendant to trial. A dismissal with prejudice is logically the only possible remedy for a violation of the two hundred seventy day rule under our jurisprudence. *Ford v. State*, 589 So. 2d 1261, 1263 (Miss. 1991); *Moore v. State*, 556 So. 2d 1031, 1033 (Miss. 1990); *Payne v. State*, 363 So. 2d 278, 279 (Miss. 1978).

¶51. Since more than two hundred seventy days passed between Simmons' arraignment and her trial and I find no good cause shown by the State in the record for the delay, it follows that the trial court erred when it denied Simmons' motion to dismiss. Accordingly, I must dissent.

**McRAE, J., JOINS THIS OPINION.**

1. The year 1992 was a leap year.

2. The year 1992 was a leap year.