The Madison County Grand Jury returned a joint indictment charging Arniz Kelley and Maxwell Kelley, individually, with two counts of kidnapping in the first degree, in violation of § 13A-6-43, Code of Alabama 1975, and one count of robbery in the first degree, in violation of § 13A-8-41, Code of Alabama 1975. Maxwell Kelley was charged by a separate count of the indictment with rape in the first degree, in violation of §13A-6-61, Code of Alabama *Page 407 
1975. Arniz Kelley was charged by a separate count of the indictment with sodomy in the first degree, in violation of § 13A-6-63, Code of Alabama 1975.
The appellants were jointly tried. The petit jury found each appellant guilty of two counts of kidnapping in the first degree and one count of robbery in the first degree. The jury found Maxwell not guilty of the rape charge and found Arniz not guilty of the sodomy charge.
The trial judge sentenced each appellant to three terms of life in prison, to run consecutively, as habitual felony offenders.
On May 27, 1988, at approximately 9:30 p.m., the two victims in this case were standing by the male victim's car outside the Tip Top Cafe in Huntsville, Madison County, Alabama. While standing there, three black males approached the couple and asked if they had a car. The male victim indicated that the car that they were standing beside was his. One of the black men, later identified as Maxwell, pulled a gun out and told the couple to get in the car. The male victim was told to drive. Maxwell got in the front seat with him. The female victim was placed in the middle of the back seat, between Arniz and a third assailant, later identified as Eric Farris.
The female victim, the prosecutrix, took her ring and her earrings off, at the insistence of Maxwell. She gave the earrings to Maxwell, and she gave her ring to Farris.
After driving a while, Maxwell ordered the male victim to stop, and the two got out of the car. Maxwell told him that he (Maxwell) would have to kill him since he did not have any money. Maxwell got back in the car in the driver's seat. He put the prosecutrix in the front seat with him. Arniz got into the back seat with the male victim. Farris took off running away from the car.
After driving for a short while, Maxwell stopped the car. He took the prosecutrix to a vacant lot, made her take her clothes off, and allegedly raped her three times.
Arniz drove off in the car with the male victim lying in the back seat. He stopped the car after a short distance. He then forced the male victim to pull his pants down, at which time he allegedly sodomized the male victim.
Maxwell took the prosecutrix back to the Tip Top Cafe and instructed her to go in and get some money. The prosecutrix went in and told the manager to call the police. The male victim was found a short time later, huddled in the back seat of his car. He appeared nervous and shaken.
Maxwell and Arniz now jointly appeal their convictions. They are represented, however, by separate counsel and have filed separate briefs. Several of their issues are similar and will be discussed together where possible.
 I
Both appellants argue that the State failed to prove that the crimes were committed in Madison County, Alabama. Thus, the appellants aver that the trial court lacked venue. They insist that their convictions be set aside as a result.
To preserve an issue concerning venue (or lack thereof), the challenging party must object before a verdict is reached. Therefore, this issue is deemed waived because there was no objection at trial specifically raising this issue.
Moreover, there was ample evidence presented at trial that the crimes were committed in Madison County, Alabama. Both victims testified that they were abducted in front of the Tip Top Cafe in Madison County. The prosecutrix was raped at a vacant lot in Madison County and was taken back to the Tip Top Cafe by Maxwell. Also, the male victim was found in his car in Madison County, Alabama.
 II
Both appellants also contend that they were denied the right to a speedy trial as guaranteed by the Sixth Amendment, U.S. Const., and article I, § 6, Ala. Const. (1901).
The charged crimes occurred on May 27, 1988. Both appellants were arrested on May 30, 1988, and charged with commission of these crimes. Soon thereafter, *Page 408 
bond was set for each appellant. Because they could not make the bond, both appellants remained incarcerated from May 30, 1988, until the time of the trial, August 25, 1989.
The relevant events pertaining to Arniz's and Maxwell's speedy trial claims are set out below.
A
Arniz Kelley
May 30, 1988 The appellant was arrested and charged with two counts of robbery, and one count of sodomy.
September 23, 1988 the August 1988 term of the Madison County grand jury returned a true bill against this appellant for two counts of kidnapping first degree, one count of robbery first degree, and one count of sodomy first degree.
October 26, 1988 This appellant filed a motion to continue, requesting a determination of his sanity.
November 16, 1988 This appellant filed a motion to sever his trial from Maxwell's.
December 23, 1988 This appellant filed a motion for further mental evaluation because of a possible finding of some mental problems.
December 29, 1988 The trial judge entered an order requiring this appellant to be transferred to Taylor Hardin Secure Medical Facility for psychological evaluation.
January 23, 1989 The trial judge sent a letter to this appellant in response to the appellant's pro se motion to dismiss his appointed counsel. The trial judge informed the appellant that he would consider his motion after his evaluation at Taylor Hardin.
March 2, 1989 The trial judge entered an order that this appellant be transported to Taylor Hardin for an outpatient evaluation.
March 17, 1989 The appellant's counsel, by letter to the trial judge, requested a speedy trial.
March 29, 1989 This appellant was evaluated at Taylor Hardin, and a report was made disclosing the appellant's mental capacity and standing.
April 5 6, 1989 The Taylor Hardin report was completed and was forwarded to the Madison County circuit clerk's office.
April 20, 1989 This appellant's attorney moved to withdraw from this case because of apparent dissatisfaction by the appellant with his performance.
April 26, 1989 The appellant's counsel's motion to withdraw was granted by the trial judge, and a new attorney was appointed.
July 28, 1989 The appellant's newly-appointed attorney filed additional discovery requests.
August 1, 1989 The trial judge entered a second discovery order.
August 21, 1989 This appellant was arraigned and pleaded not guilty.
August 25, 1989 This appellant was tried and convicted of two counts of kidnapping first degree and one count of robbery first degree.
B
Maxwell Kelley
May 30, 1988 This appellant was arrested and charged with two counts of kidnapping, one count of robbery, and one count of rape.
September 23, 1988 The August 1988 term of the Madison County grand jury returned a true bill against this appellant for two counts of kidnapping first degree, one count of robbery first degree, and one count of rape first degree. *Page 409 
October 11, 1988 This appellant, through his attorney, filed a petition for psychiatric examination and a motion to suppress his statements to the police.
October 25, 1988 This appellant refiled the same two motions that he filed on October 11.
December 5, 1988 This appellant pleaded not guilty and not guilty by reason of insanity or mental defect.
January 23, 1989 The appellant, through counsel, filed an application for youthful offender status.
February 13, 1989 The appellant's application for youthful offender status was denied by the trial judge.
March 23, 1989 The State filed a certificate, noting that it had complied with the court's discovery order.
April 26, 1989 This appellant, through counsel, filed a motion for speedy trial.
August 16, 1989 This appellant, through counsel, filed a motion to dismiss for lack of a speedy trial.
August 21, 1989 This appellant was arraigned and pleaded not guilty.
August 25, 1989 This appellant was tried and convicted of two counts of kidnapping first degree and one count of robbery first degree.
 C
There are four factors which must be weighed when reviewing an appellant's claim that he has been denied his constitutional right to a speedy trial. These factors are: (a) the length of the delay; (b) the reason for the delay; (c) the appellant's assertion of that right; and (d) the degree of prejudice to the appellant because of unnecessary delays. Barker v. Wingo,407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117 (1971).
 D Length of delay. Both of these appellants were arrested on May 30, 1988. They remained incarcerated from this date until the date of the trial, August 25, 1989. This period spanned 15 months.
We have held before that it is not necessary for us to review the remaining Barker factors if we fail to find the delay "presumptively prejudicial." "[T]he length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." Barker,407 U.S. at 530-31, 92 S.Ct. at 2192, 33 L.Ed.2d at 117; Wilson v. State,407 So.2d 584 (Ala.Cr.App. 1981); Watson v. State,389 So.2d 961 (Ala.Cr.App. 1980).
In determining if the delay is presumptively prejudicial, we must look at the facts and circumstances peculiar to this case.United States v. Eight Thousand Eight Hundred and Fifty Dollarsin United States Currency, 461 U.S. 555, 565, 103 S.Ct. 2005,2012, 76 L.Ed.2d 143, 152 (1983); Smelley v. State,564 So.2d 74 (Ala.Cr.App. 1990).
With respect to Arniz's claim that he was denied the right to a speedy trial, it seems clear to us that the vast majority of the 15-month delay was caused by his own actions. Particularly, Arniz sought psychological evaluation at the Taylor Hardin Facility, and he moved to have his court-appointed counsel replaced. "Delays occasioned by the defendant or on his behalf are excluded from the length of delay and are heavily counted against the defendant in applying the balancing test ofBarker." Walker v. State, 386 So.2d 762, 763 (Ala.Cr.App.),cert. denied, 386 So.2d 765 (Ala. 1980). See also Argo v.State, 282 Ala. 509, 213 So.2d 244 (1968); Hammett v. State,45 Ala. App. 52, 223 So.2d 293 (1969); Love v. State, 44 Ala. App. 85, 203 So.2d 140 (1967). Therefore, with regard to Arniz, we find that the delay is not presumptively prejudicial.
This cannot be said regarding Maxwell, however. On February 13, 1989, the trial court denied Maxwell's application for youthful offender status. There is no evidence whatever that would indicate that the six-month delay between February 13, 1989, and August 25, 1989, the date of trial, *Page 410 
was caused by any fault of Maxwell. Instead, it appears that he was confined during this period of time, awaiting the joint trial of himself and Arniz. This delay was caused by the trial court's attempt to resolve legal issues pertaining to Arniz.
The delays were caused by the State's desire to try the two defendants together. See Lewis v. State, 469 So.2d 1291
(Ala.Cr.App. 1984).
The issue becomes, then, whether Maxwell was so prejudiced by the delays (occasioned by the legal actions of his co-defendant, Arniz) as to require us to review the remainingBarker factors. We find that the 15-month delay acts as "a sufficient springboard for inquiry into the other relevant factors," as they pertain to Maxwell. Wade v. State,381 So.2d 1057, 1059 (Ala.Cr.App.), cert. denied, 381 So.2d 1062 (Ala. 1980), quoting United States v. Edwards, 577 F.2d 883, 888 (5th Cir.), cert. denied, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427
(1978).
 E Reason for delay. The State has an affirmative duty to try an accused within a reasonable time. Taylor v. State,429 So.2d 1172, 1174 (Ala.Cr.App.), cert. denied, 429 So.2d 1172 (Ala. 1983), cert. denied, 464 U.S. 950, 104 S.Ct. 366,78 L.Ed.2d 326 (1983). This premise is not altered simply because the State desires to try two accused persons in a joint trial. An accused's right to a speedy trial is not forfeited when his codefendant seeks to delay the trial. See Garcia v. State,498 So.2d 401 (Fla. 1986) (State is not entitled to an automatic speedy trial extension every time a codefendant moves for a continuance); Miner v. Westlake, 478 So.2d 1066 (Fla. 1985) (an accused's motion to sever should be granted if trial is unreasonably delayed because of codefendant's actions or inactions).
Maxwell was arrested on May 30, 1988. He was indicted on September 23, 1988. Between September 23, 1988, and February 13, 1989, the delays were caused, at least in part, by this appellant.
During the period of January 23, 1989, and February 13, 1989, Maxwell's youthful offender status was being determined. This determination is not a "criminal prosecution" within the meaning of the Sixth Amendment, U.S. Const., and thus is exempt from our consideration of the alleged speedy trial violation.Cruse v. State, 489 So.2d 694 (Ala.Cr.App. 1986).
Therefore, our focus is on the six-month period between February 13, 1989, and August 25, 1989. We can find no reason for the delay except to resolve Arniz's sanity issue and his dissatisfaction with his court-appointed counsel. Consequently, the issue becomes whether Maxwell was so prejudiced by this six-month delay as to warrant reversal of his conviction.
 F Assertion of the right. Repeated requests for a speedy trial weigh heavily in favor of an accused. Wilson v. State,407 So.2d 584, 588 (Ala.Cr.App. 1981).
On March 23, 1989, the State noted that it had complied with the court's discovery request. Approximately one month later, on April 26, 1989, Maxwell moved for a speedy trial. On this same day, the trial judge granted Arniz's court-appointed counsel's motion to withdraw, and Arniz was assigned a new attorney.
On August 16, 1989, Maxwell moved to dismiss the pending indictment against him because of the denial of his right to a speedy trial. Both Maxwell and Arniz were tried on August 25, 1989.
 G Prejudice. Maxwell claims that he was prejudiced because of the inordinate and inexcusable delay (15 months). Specifically, he contends that witnesses in his behalf were not able to give "fruitful testimony." We do not find such prejudice, since Maxwell did not call any witnesses in his behalf, nor has he alleged the unavailability of witnesses because of the delay.
Moreover, the 15-month incarceration is "not sufficientlylong in and of itself to cause substantial prejudice to warrant a *Page 411 
reversal. See Strunk v. United States, 412 U.S. 434,93 S.Ct. 2260, 37 L.Ed.2d 56 (1973) (prolonged delay may subject incarcerated suspect to emotional distress); United States v.Herman, 576 F.2d 1139 (5th Cir. 1978) (incarceration during 22-month delay not sufficiently oppressive)." Smelley v. State,564 So.2d 74 (Ala.Cr.App. 1990) (emphasis in original) (28-month delay and incarceration did not so prejudice accused as to warrant a reversal).
Therefore, we conclude that Maxwell's 15-month incarceration did not cause sufficient prejudice to warrant reversal of his conviction. Cf. Montgomery v. State, 446 So.2d 697, 700
(Ala.Cr.App. 1983), cert. denied, (Ala. 1984) (90-day delay in joint trial not prejudicial).
 III
Eric Farris was the third party who participated with these two appellants in abducting the victims. But, when the car was stopped on the first occasion, Farris apparently had second thoughts, left the car, and ran.
The State, at trial, indicated its desire to call Farris to the stand. The trial judge, therefore, appointed Farris an attorney ad hoc vice.
Out of the hearing of the jury, the trial judge met with both defense lawyers, the prosecutor, and Farris's appointed counsel, Randall Gladden. Gladden informed the judge that Farris intended to invoke his Sixth Amendment right against self-incrimination and not testify.
The trial judge, thereafter, called Farris to the stand and asked him, out of the jury's presence, if he would testify. Farris indicated that he would not testify even if he was granted immunity and the trial judge ordered him to testify.
When the jury was brought back in, the prosecutor called Farris to the stand. She asked Farris to state his name, which he did. She then asked Farris if he was with the appellants on the evening of May 27, 1988. At this time, Farris, at the direction of Gladden, invoked his Fifth Amendment right. The State ceased its questioning and rested its case.
These appellants now contend that their Sixth Amendment right to effective cross-examination was hindered by the State's actions. In support of their contention, the appellants cite this court to Allison v. State, 331 So.2d 748 (Ala.Cr.App. 1976), and Shockley v. State, 335 So.2d 659 (Ala.Cr.App. 1975).
We find no merit to the appellant's contention. The trial judge discussed, at length, with the attorneys involved the best way to handle Farris's refusal to testify. In that discussion, the following occurred:
 "THE COURT: Well, no. Let me ask you this. If it is his intent not to testify out of the presence of this jury, then would defense counsel object to him being placed on the stand in front of the jury and invoking his Fifth Amendment privileges?
"MR. SANDLIN: I would not.
 "MR. CAYLOR: I would not, your Honor. . . ." (R. 314.)
The appellants' only concern was that they did not want the State to try and impeach Farris with the statement which he had previously given to the police, if Farris refused to testify. The trial judge agreed with the appellants in this respect.
An accused cannot agree to a resolution of an issue at trial and then seek to challenge that same resolution on appeal.Reeves v. State, 456 So.2d 1156, 1160 (Ala.Cr.App. 1984). Therefore, the appellant's claim was not properly preserved.
 IV
Both appellants next contend that the photographic array which was shown to witnesses and admitted into trial was unduly suggestive. The appellants argue that the trial judge committed reversible error by not inquiring into the suggestiveness of the photographic array.
The appellants objected at trial to the admission of the photographic array on the grounds that it was conducted by suggestive means. The appellants did not, however, offer any evidence in support of this contention.
The appellants now argue that the trial court has the duty to determine the suggestive *Page 412 
and prejudicial effects of photographs which are admitted into evidence. We disagree with this assertion. The trial judge need only be concerned with objections interposed and the grounds stated therefor. See Dorsey v. State, 406 So.2d 457
(Ala.Cr.App. 1981).
Furthermore, the admission of photographs into evidence is a matter within the sound discretion of the trial court.Saffold v. State, 485 So.2d 806, 807 (Ala.Cr.App. 1986); Barnesv. State, 445 So.2d 995 (Ala.Cr.App. 1984). Based on the objection placed before the trial judge, we find no abuse of that discretion.
 V
Last, Arniz Kelley contends that he was denied effective assistance of counsel. Specifically, Arniz argues that his attorney could have and should have raised a statutory defense to the charge of kidnapping.
This issue cannot be raised on this appeal, since it has not been presented to the trial court.
 " ' "[C]laims of inadequate representation cannot be determined on direct appeal where such claims were not raised before the . . . [trial] court and there has been no opportunity to develop and include in the record evidence bearing on the merits of the allegation." ' United States v. Barham, 666 F.2d 521, 524 (11th Cir.), cert. denied, 456 U.S. 947, 102 S.Ct. 2015, 72 L.Ed.2d 470 (1982). See also United States v. Irvin, 736 F.2d 1489, 1492 (11th Cir. 1984); Thomas v. State, 447 So.2d 203, 208 (Ala.Cr.App. 1984)."
Dossey v. State, 489 So.2d 662, 666 (Ala.Cr.App.), cert.denied, (Ala. 1986).
For the reasons herein stated, the judgments of the trial as to both appellants are due to be, and they are hereby, affirmed.
AFFIRMED.
All Judges concur.