Styrom v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-301-CR

Â Â Â Â Â BOYD COOKE STYRON, JR.,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee 

From the County Court
Johnson County, Texas
Trial Court # M93-00054
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â In May 1993, Boyd Styron, Jr. pleaded guilty to two chargesâdriving while intoxicated in
cause number M92-03423, and possession of marijuana in cause number M93-00054âand the
court sentenced him to two years' probation and six months probation, respectively. See Tex.
Rev. Civ. Stat. Ann. art. 6701l-1 (Vernon Supp. 1995) (repealed 1993) (current version at Tex.
Penal Code Ann. Â§ 49.04 (Vernon 1994); Tex. Health & Safety Code Ann. Â§ 481.121
(Vernon 1992). In July 1994 the court revoked his probation in both causes. He has attempted
to appeal in both causes: cause M92-03423 in cause number 10-94-293-CR and cause M93-00054
in this appeal. Because his notice of appeal in this cause was untimely, we will dismiss this appeal
for want of jurisdiction.
Â Â Â Â Â Â The State moved to revoke his probation in both causes based on a January 1994 DWI
conviction in McLennan County. At a combined hearing on July 19, 1994, Styron pleaded true
to the sole allegation in cause number M93-00054 and to several of the allegations in cause M92-03423. However, because the State had withdrawn its punishment-recommendation offer at the
start of the hearing, Styron went to the court for punishment. The court assessed punishment of
180 days in the county jail in cause number M93-00054 and 180 days in the county jail, followed
by 180 days on work-release, in cause number M92-03423. The punishments were to run
concurrently. At the conclusion of the hearing, Styron's attorney gave oral notice of appeal, and
the court set a $1,000 appeal bond. However, no written notices of appeal were filed at that time
in either cause.
Â Â Â Â Â Â On August 17, Styron filed a pro-se "Motion To Set Aside Judgment" in cause number M92-03423. He did not file any post-judgment motions in the trial court in cause number M93-00054. 
Therefore, his time to file a written notice of appeal in this cause expired on August 18, 1994. 
See Tex. R. App. P. 41(b)(1). 
Â Â Â Â Â Â He did, however, file a motion for an extension of time to file written notices of appeal in this
court on September 21, 1994. In that motion, he alleged that his failure to file written notices of
appeal was due to his attorney's neglect. He attached copies of notices of appeal for both causes
filed in the trial court the day before. Although we denied his motion for an extension of time,
we docketed both causes as appeals so that we could obtain the record and determine which cause,
if either, we have jurisdiction over. 
Â Â Â Â Â Â After examining the record, we have determined, as stated above, that Styron's notice of
appeal in this cause was due on August 18. See id. He did not file a written notice of appeal until
September 20. Thus, his written notice of appeal was thirty-three days too late. See id. Absent
a timely, written notice of appeal, we do not have jurisdiction over a criminal appeal. See Shute
v. State, 744 S.W.2d 96, 97 (Tex. Crim. App. 1988); Reyes v. State, 883 S.W.2d 291, 292-93
(Tex. App.âEl Paso 1994, no pet. h.). Therefore, we do not have jurisdiction over this cause. 
Â Â Â Â Â Â In this opinion we deal only with the issues relating to trial court cause number M93-00054
(appeal cause number 10-94-301-CR). We express no opinion concerning our jurisdiction over
trial court cause number M92-03423 (appeal cause number 10-94-293-CR).
Â Â Â Â Â Â Â Â This appeal is dismissed for want of jurisdiction.
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â PER CURIAM

Before Chief Justice Thomas,
Â Â Â Â Â Â Justice Cummings, and
Â Â Â Â Â Â Justice Vance
Dismissed for want of jurisdiction
Opinion delivered and filed January 25, 1995
Do not publish 



-height:200%'>   Numerous
states have enacted speedy trial laws with identical or substantially similar
provisions.[3]Â  See
 Alaska R. Crim. P. 45(d)(5); Ark.
R. Crim. P. 28.3(g); Colo. Rev.
Stat. Ann. Â§ 18-1-405(6)(c); Colo.
R. Crim. P. 48(b)(6)(III); Conn.
Practice Book Â§ 43-40(4); Fla. R.
Crim. P. 3.191(l)(5); Haw. R.
Pen. P. 48(c)(7); Mass. R. Crim.
P. 36(b)(2)(E); Mich. R. Crim. P.
6.004(C)(5); Neb. Rev. Stat. Â§
29-1207(4)(e); N.Y. Pen. Law Â§
30.30(4)(d); S.D. Codified Laws Â§
23A-44-5.1(4)(e); see also Unif.
R. Crim. P. 722(f)(13), 10 U.L.A. 203-04 (2001).Â  Oklahoma by comparison
permits delay if Âthe accused is charged as a codefendant or co-conspirator and
the court has determined that the codefendants or co-conspirators must be tried
before separate juries taken from separate jury panels.ÂÂ  Okla. Stat. Â§ 812.2(A)(2)(f).

Â Â Â Â Â Â Â Â Â  The
State of New York has adopted the federal approach regarding when the speedy
trial clock begins to run in cases involving multiple defendants.Â  See
People v. Barnett, 517 N.Y.S.2d 849, 850-51 (N.Y. Crim. Ct. 1987)
(construing N.Y. Pen. Law Â§
30.30(4)(d)).Â  Conversely, the State of Ohio, which does not have a comparable
statutory exclusion, has rejected this approach.Â  See State v. Leadingham, 1989 Ohio App. LEXIS 2242, at *5-7 (Ohio Ct. App. 1989).

Â Â Â Â Â Â Â Â Â  Like
 Ohio and many other states, Texas does not have a statutory exclusion
comparable to that found in the federal Speedy Trial Act for delays
attributable in some manner to the StateÂs attempt to jointly try co-defendants.Â 
In addition, a slight majority of states and the District of Columbia have
concluded that, for a Sixth Amendment speedy trial claim, delays attributable
to a co-defendant are not weighed against the defendant, particularly if the
defendant objects to any delays sought by a co-defendant.Â  See Kelley v.
State, 568 So. 2d 405, 410 (Ala. Crim. App. 1990); Sanchez v. Super. Ct. of Los Angeles County, 182 Cal. Rptr. 703, 708 (Cal. Ct. App. 1982); State v.
Ellis, 1987 Del. Super. LEXIS 1038, at *6 (Del. Super. Ct. 1987); Hartridge
v. United States, 896 A.2d 198, 210 (D.C. 2006); Jackson v. State,
534 S.E.2d 796, 800 (Ga. 2000); State v. Winters, 690 N.W.2d 903, 909-10
(Iowa 2005); Epps v. State, 345 A.2d 62, 75-76 (Md. 1975); Flores v. State, 574 So. 2d 1314, 1322 (Miss. 1990); contra Lee v. State,
684 N.E.2d 1143, 1146 (Ind. 1997); Kelly v. Richardson, 469 S.W.2d 700,
700 (Ky. Ct. App. 1971); State v. Gale, 526 So. 2d 861, 864 (La. Ct. App. 1988); State v. Smith, 2004-Ohio-6062, at Â¶ 20 (Ohio Ct. App. 2004); Commonwealth
v. Kimbrough, 872 A.2d 1244, 1260 (Pa. Super. Ct. 2005); State v. Dukes,
182 S.E.2d 286, 288 (S.C. 1971).

Â Â Â Â Â Â Â Â Â  A
minority of states with speedy trial statutes have similarly concluded that
delays attributable to a co-defendant are not weighed against the defendant,
particularly if the defendant objects to any delays sought by a co-defendant.Â  People
v. Abeyta, 578 P.2d 645, 646 (Colo. 1978); Miner v. Westlake, 478
So. 2d 1066, 1067 (Fla. 1985); People v. Roberts, 479 N.E.2d 386, 390 (Ill. Ct. App. 1985); State v. McDonald, 718 So. 2d 542, 545 (La. Ct. App. 1998); Flores,
574 So. 2d at 1321; State v. Anthony, 448 A.2d 744, 748 (R.I. 1982).Â 
Consistent with this position, courts in at least five states have concluded
that delays attributable to a co-defendant should be weighed against a defendant
who either joined in the co-defendantÂs requested delay or failed to object.Â  See
Hicks v. State, 12 S.W.3d 219, 222-23 (Ark. 2000); State v. Faalafua,
686 P.2d 826, 829-30 (Haw. 1984); State v. Campbell, 662 P.2d 1149, 1154
(Ida. 1983); People v. Fluellen, 553 N.Y.S.2d 670, 672 (N.Y. App. Div.
1990); State v. Morrison, 1995 Ohio App. LEXIS 5352, at *5-6 (Ohio Ct.
App. 1995).Â  At least five other states apparently take the position that
delays attributable to a co-defendant should not be weighed against the
prosecution or are otherwise justified under those statesÂ respective speedy
trial statutes, regardless of whether there is an objection. Â See State v. Hankins, 686 P.2d 740, 745 (Ariz. 1984); Randall v. State,
474 N.E.2d 76, 84 (Ind. 1985); Commonwealth v. Long, 532 A.2d 853, 855 (Pa. Super. Ct. 1987); State v. Dent, 869 P.2d 392, 401-02 (Wash. 1994); State v.
Johnson, 1994 Wisc. App. LEXIS 1271, at *8-9 n.4 (Wisc. Ct. App. 1994) (per
curiam).

Â Â Â Â Â Â Â Â Â  The McDonald
decision rendered by the Second Circuit Court of Appeals for Louisiana appears
to conflict with that of its sister court, the Fourth Circuit Court of Appeals,
in Gale.Â  Compare McDonald, 718 So. 2d at 545, with Gale, 526
So. 2d at 864.Â  Conversely, the Mississippi Supreme Court applied the same
reasoning to both its Sixth Amendment speedy trial analysis and its statutory
analysis.Â  See Flores, 574 So. 2d at 1321-22.Â  Disregarding these
decisions, we presume that the remaining four states with speedy trial statutes
(Colorado, Florida, Illinois, and Rhode Island) which have determined that
delays attributable to a co-defendant are not weighed against the defendant
would reach the same conclusion if presented with a Sixth Amendment speedy
trial claim under these circumstances.Â  See Abeyta, 578 P.2d at 646; Miner,
478 So. 2d at 1067; Roberts, 479 N.E.2d at 390; Anthony, 448 A.2d
at 748.

Â Â Â Â Â Â Â Â Â  We
agree with these decisions and hold that, when co-defendants are joined for
trial, delays attributable to one defendant are not attributable to the
co-defendants who object to those delays.Â  See Kelley, 568 So. 2d at
410; Sanchez, 182 Cal. Rptr. at 708; Abeyta, 578 P.2d at 646; Ellis,
1987 Del. Super. LEXIS 1038, at *6; Hartridge, 896 A.2d at 210; Miner,
478 So. 2d at 1067; Jackson, 534 S.E.2d at 800; Roberts, 479
N.E.2d at 390; Winters, 690 N.W.2d at 909-10; Epps, 345 A.2d at
75-76; Flores, 574 So. 2d at 1322; Anthony, 448 A.2d at 748; accord
Hicks, 12 S.W.3d at 222-23; Faalafua, 686 P.2d at 829-30; Campbell,
662 P.2d at 1154; Fluellen, 553 N.Y.S.2d at 672; Morrison, 1995
Ohio App. LEXIS 5352, at *5-6.

Â Â Â Â Â Â Â Â Â  We likewise hold, consistent with the
Ohio Court of Appeals, that each defendantÂs Âspeedy trial clockÂ begins to run
on the date of the defendantÂs arrest or the presentment of an indictment or
information against that defendant, whichever occurs earlier, regardless of
whether the State seeks to try the defendant jointly with a co-defendant.Â  See
Shaw, 117 S.W.3d at 889; Shea, 167 S.W.3d at 102 n.1; see also
Leadingham, 1989 Ohio App. LEXIS 2242, at *5-7.

Â Â Â Â Â Â Â Â Â  Applying these principles, we now
examine the Barker factors.

Length of Delay

Â Â Â Â Â Â Â Â Â  The length of delay is Âa triggering
mechanismÂ for consideration of the remaining factors.Â  Barker, 407 U.S. at 530, 92 S. Ct. at 2192; Shaw, 117 S.W.3d at 889; Shea, 167 S.W.3d at 102.Â  The
delay is measured from the date of arrest or the filing of the information,
whichever occurs first, to the date of trial.Â  See Shaw, 117 S.W.3d at
889; Shea, 167 S.W.3d at 102 n.1. Â A delay of one year is Âunreasonable
enough to trigger the Barker enquiry.Â Â Doggett v. United States,
505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 2691 n.1, 120 L. Ed. 2d 520 (1992); accord
Shaw, 117 S.W.3d at 889.

Â Â Â Â Â Â Â Â Â  Perhaps it could be argued that the
grant of the defendantsÂ request for mistrial should operate to start afresh
the Âspeedy trial clock.ÂÂ  However, the ÂclockÂ continues to run until the
commencement of a trial which concludes with a verdict or other final disposition.Â 
See, e.g., Shaw, 117 S.W.3d at 889 (calculating length of delay from
date of indictment to commencement of second trial after first trial had ended
with declaration of mistrial).

Â Â Â Â Â Â Â Â Â  For Manley and Brown, the length of
delay was thirty-four months.Â  For Lewis, it was twenty-nine months.Â  And for Ratcliff,
it was nineteen months.Â  Thus, the delays are sufficient to require
consideration of the remaining factors.Â  See Doggett, 505 U.S. at 652 n.1, 112 S. Ct. at 2691 n.1; Shaw, 117 S.W.3d at 889.

Reasons for the Delay

Â Â Â Â Â Â Â Â Â  ÂThe State has the burden of
justifying the delay.ÂÂ  Shaw, 117 S.W.3d at 889 n.3.Â  Different weights
are assigned to the various reasons for the delay asserted by the State.Â  Id. at 889.

Â Â Â Â Â Â Â Â Â  The reasons for delay are similar in
all four cases, although some of the cases present unique reasons applicable to
only that particular case.Â  The State cites the following reasons to justify
the delay:

Â·Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Âthe great difficulties
inherent in scheduling four cases and four attorneys, thru arraignment,
pre-trials, docket calls, final pre-trials, discovery, motions, and trialÂ;

Â 

Â·Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
a crowded trial court docket
which resulted in the trial court passing over these cases on several occasions
to try other cases;

Â 

Â·Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
continuance motions filed by
Manley and Brown;

Â 

Â·Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
LewisÂs decision to accept
then later reject a plea bargain;

Â 

Â·Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
an October 2003 reset
obtained by LewisÂs counsel for maternity leave; and

Â 

Â·Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
the mistrial.

Â 

Â Â Â Â Â Â Â Â Â  Â[A] crowded court docket is not a
valid reason for delay and must be counted against the State, although not
heavily.ÂÂ  Shaw, 117 S.W.3d at 890.Â  The State requested a joint trial
which the court granted over AppelleesÂ objections.Â  Thus, any scheduling
difficulties (and corresponding delays) arising from the StateÂs tactical
decision to try Appellees together must also be weighed against the State.Â  See Kelley, 568 So. 2d at 410; Sanchez, 182 Cal. Rptr. at 708; Abeyta, 578 P.2d at 646; Ellis, 1987 Del. Super. LEXIS
1038, at *6; Hartridge, 896 A.2d at 210; Miner, 478 So. 2d at 1067;
 Jackson, 534 S.E.2d at 800; Roberts, 479 N.E.2d at 390; Winters,
690 N.W.2d at 909-10; Epps, 345 A.2d at 75-76; Flores, 574 So. 2d
at 1322; Anthony, 448 A.2d at 748.

Â Â Â Â Â Â Â Â Â  The court granted a continuance motion
filed by Brown which resulted in a one-month delay in his case.[4]
Â The court granted two continuance motions filed by Manley which resulted in
three monthsÂ delay in his case.Â  BrownÂs motion and ManleyÂs first motion were
filed and granted before the State filed its motion for joint trial, and these
motions were not served on the other co-defendants.Â  Thus, Lewis and Ratcliff
had no opportunity or reason to object to these continuance motions, nor did
Brown or Manley have opportunity or reason to object to each otherÂs motion.Â 
ManleyÂs second continuance motion was filed after the court granted the
StateÂs motion for joint trial.Â  However, Manley did not serve copies of this
motion on his co-defendants.Â  Thus, they did not have opportunity to object to
ManleyÂs second continuance motion.Â  Accordingly, the delays attributable to
BrownÂs continuance motion should be weighed against Brown, and the delays
attributable to ManleyÂs continuance motions should be weighed against Manley,
but none of these delays should be weighed against Lewis and Ratcliff.Â  Id.

Â Â Â Â Â Â Â Â Â  The Âmaternity continuanceÂ sought by
LewisÂs counsel resulted in a five-month delay.Â  However, there is no
indication in the record that any of LewisÂs co-defendants were aware that his
attorney sought this continuance.Â  Therefore, this delay should be weighed
against Lewis but not against his co-defendants.Â  Id.

Â Â Â Â Â Â Â Â Â  There was a reference to a plea offer
during the December 2004 hearing on LewisÂs speedy trial motion.Â  Apparently,
the State offered to reduce LewisÂs charge to a Class ÂCÂ misdemeanor, but
Lewis ultimately rejected the offer.[5]Â 
Any delay attributable to good faith plea negotiations should not be weighed
against the State.Â  State v. Munoz, 991 S.W.2d 818, 824 (Tex. Crim. App. 1999).Â  However, we may presume from the record that the court attributed a
delay of no more than three months to the partiesÂ plea negotiations based on
the dates in the notice settings which appear in the record.Â  See Zamorano,
84 S.W.3d at 648 (appellate court must presume that trial court resolved any
disputed fact issues against losing party and must defer to any implied
findings supported by the record).

Â Â Â Â Â Â Â Â Â  Appellees contend that the mistrial
should be weighed against the State because it arose from the StateÂs failure
to disclose Brady evidence before trial.Â  On the second day of trial,
three different pieces of evidence came to light which arguably constitute Brady
evidence: (1) a witness for the State was unable to identify any of the four
Appellees as a suspect in a photo line-up she viewed a few weeks after the
assault; (2) another witness had made an electronically-recorded statement to
the police suggesting that two of the Appellees may not have been involved in
the assault; and (3) another person who had since joined the Army and was in basic
training told the police that none of the four Appellees was involved in the
assault.

Â Â Â Â Â Â Â Â Â  Appellees filed standard Brady motions
before trial, but the State did not identify any Brady evidence.Â  During
the jury trial, the StateÂs first witness identified Manley and Brown as having
been in the club where the assault occurred on the date in question.Â  However,
during the questioning of a detective that afternoon, the State provided
Appellees with a copy of a detectiveÂs offense report, in which it was revealed
that the witness had been unable to identify any of the defendants in a
photographic line-up prepared a few weeks after the assault.Â  Instead, the
witness identified three other men in the line-up as persons who looked
ÂfamiliarÂ to her.

Â Â Â Â Â Â Â Â Â  Appellees also filed pretrial motions
requesting copies of any recorded witness statements.Â  AppelleesÂ counsel
discovered at trial that the police had recorded conversations with at least
two witnesses and that the State had failed to provide a copy of these
recordings to Appellees or even disclose their existence.Â  The trial court
ordered the State to play these recordings for Appellees and their attorneys
during the lunch break. Â After the lunch break, counsel for Ratcliff and
counsel for Lewis both asked the court to dismiss the prosecutions against
their clients because the State had failed to produce five recordings which
contain information suggesting that their clients may not have been involved in
the assault.Â  The court deferred a ruling on these motions.

Â Â Â Â Â Â Â Â Â  Finally, examination of the previously
undisclosed report prepared by the detective revealed that another person,
Michael Bielamowicz, told the police on the night of the assault that none of
the Appellees was involved in the assault.Â  Bielamowicz was arrested for public
intoxication that night, and the detective concluded, after reviewing the
offense report for the public intoxication arrest, that he would not be Âa
credible or a reliable witness.ÂÂ  Thus, the detective did not make any attempt
to contact Bielamowicz.

Â Â Â Â Â Â Â Â Â  At the end of the second day of trial,
the court advised that a mistrial rather than a dismissal might be the
appropriate remedy for a Brady violation but deferred a ruling and
instructed the parties to try and locate Bielamowicz.Â  The next morning it was
determined that Bielamowicz was in basic training with the Army and would not
be available for in-court testimony for several weeks.Â  With the assistance of
the Judge Advocate General Corps, Bielamowicz was located in South Carolina and
testified via teleconference (and outside the juryÂs presence) about his
recollection of the pertinent facts.Â  His testimony was contradictory to that
of some of the StateÂs witnesses, and so counsel for Appellees advised the
court that they wanted Bielamowicz to be subpoenaed for his testimony.Â  All
four Appellees requested a mistrial, which the court granted.

Â Â Â Â Â Â Â Â Â  We may presume from the record that
the court attributed the delay from the mistrial to the State because of its
failure to disclose the evidence which necessitated that ruling.Â  See
Zamorano, 84 S.W.3d at 648 (appellate court must presume that trial court
resolved any disputed fact issues against losing party and must defer to any
implied findings supported by the record).Â  As the court stated in the hearing
on the speedy trial motions, Âthe mistrial, which though inadvertent, at least
is partly the StateÂs responsibility.Â

Â Â Â Â Â Â Â Â Â  The delay from the mistrial lasted a
minimum of six months, which is the amount of time that passed between the
courtÂs declaration of a mistrial and the initial hearing on LewisÂs speedy
trial motion.[6] Â Because
the mistrial was granted due to the StateÂs failure to disclose Brady evidence,
this six-month delay can be weighed against the State.

Â Â Â Â Â Â Â Â Â  At the December 2004 status hearing,
the parties tentatively agreed to a trial setting in February 2005.Â  It was
still unknown at that juncture when Bielamowicz would be available to testify,
and the State had not yet provided access to the previously undisclosed tape
recordings which necessitated the mistrial.

Â Â Â Â Â Â Â Â Â  Lewis asked for a dismissal on speedy
trial grounds, because a retrial would violate double jeopardy, and because
there was no probable cause to support his prosecution.Â  Lewis first presented
the speedy trial argument and testified in his own behalf.Â  Lewis explained
that the delay had been burdensome for him because he had moved to Houston a few months before the first trial to attend school and was having to miss school
for hearings.Â  He also testified that it caused him stress and anxiety to be
accused of something he did not do and that the delay and additional settings
caused additional stress.

Â Â Â Â Â Â Â Â Â  On the double jeopardy claim, Lewis
argued that dismissal was warranted because the State had acted in bad faith by
failing to disclose the Brady evidence which non-disclosure was one of
the grounds for the mistrial.Â  See Oregon v. Kennedy, 456 U.S. 667, 679, 102 S. Ct. 2083, 2091, 72 L. Ed. 2d 416 (1982); Bauder v. State, 921 S.W.2d
696, 699 (Tex. Crim. App. 1996), overruled by Ex parte Lewis, NO.
PD-0577-05, 2007 Tex. Crim. App. LEXIS 33 (Tex. Crim. App. Jan. 10, 2007); Ex
parte Fife, 49 S.W.3d 35, 38 (Tex. App.ÂFort Worth 2001, pet. refÂd).

Â Â Â Â Â Â Â Â Â  Finally, Lewis argued that the case
should be dismissed because none of the StateÂs witnesses during the first
trial ever identified him as one of the assailants.

Â Â Â Â Â Â Â Â Â  The court deferred a ruling on LewisÂs
motion. Instead, the court advised the parties that it would review cases on the
right to speedy trial, expressing doubt at that time about the merits of
LewisÂs speedy trial claim.Â  The court asked the prosecutor to review his file
and identify evidence tending to inculpate Lewis.Â  All agreed that the matter
would be taken up again within a few weeks.Â  However, it was apparently not
taken up again until August 2005.

Â Â Â Â Â Â Â Â Â  After the December 2004 hearing, the
clerkÂs record contains a June 2005 notice of setting advising the parties that
the case was set for a Âscheduling orderÂ on July 8.Â  The record also contains
a July 12 notice advising that the case was set for a Âpreferential jury trialÂ
setting of August 22.Â  Except for RatcliffÂs case, the clerkÂs record provides
no indication of the reason the case was not taken up between December 2004 and
June 2005.

Â Â Â Â Â Â Â Â Â  In RatcliffÂs case, the court signed
an order in January 2005 transferring his case to a Brazos County district court where he had a felony case pending.Â  In April, the district court
transferred RatcliffÂs case back to the County Court at Law pursuant to a plea
agreement between Ratcliff and the State.Â  This delay should not be weighed
against the State.Â  See Munoz, 991 S.W.2d at 824.Â  But it should not be
weighed against RatcliffÂs co-defendants either.

Â Â Â Â Â Â Â Â Â  At the August 2005 hearing, the
prosecutor advised the court that the State had almost finished transcriptions
of the previously undisclosed tape recordings which had necessitated the
mistrial.Â  This further delay on the part of the State should also be weighed
against the State.[7]

Assertion of Right to Speedy Trial

Â Â Â Â Â Â Â Â Â  Lewis asserted his right to a speedy
trial in a motion filed less than five months after the mistrial was declared.Â 
The other Appellees did not file speedy trial motions until ten months later,
on the eve of the second trial.

Â Â Â Â Â Â Â Â Â  After the court granted LewisÂs motion
to dismiss on speedy trial grounds, BrownÂs newly-appointed counsel asked the
court for similar relief.[8]Â 
BrownÂs counsel acknowledged that Brown had not promptly filed a motion for
this relief but argued that: (1) he had only recently been appointed; (2) all
four attorneys had adopted the othersÂ motions during the first trial; and (3)
if Brown were not granted a dismissal on speedy trial grounds, then Brown would
have a meritorious claim for ineffective assistance of counsel because of his
prior attorneyÂs failure to timely raise the issue.

Â Â Â Â Â Â Â Â Â  The prosecutor opined that it would be
better to treat all four cases the same Âfor judicial economy.Â

Prejudice from Delay

Â Â Â Â Â Â Â Â Â  Only Lewis presented testimony
regarding the impact the delay was having on him.Â  He explained that the delay
had been burdensome for him because he had moved to Houston a few months before
the first trial to attend school and was having to miss school for hearings.Â 
He also testified that it caused him stress and anxiety to be accused of
something he did not do and that the delay and additional settings caused
additional stress.

Â Â Â Â Â Â Â Â Â  The other defendants alleged in their
speedy trial motions that they were prejudiced because: (1) they have Âsuffered
much anxiety and concernÂ; (2) unspecified witnesses for the defense have
disappeared and/or their recall of pertinent events has faded; and (3) the
Âexcessive delayÂ has Âpresumptively compromised the ability to defend this
case in ways not susceptible to proof.Â

Analysis Regarding Lewis

Â Â Â Â Â Â Â Â Â  The length of delay for Lewis was
twenty-nine months.Â  The evidence supports a finding that eight of these months
are attributable to Lewis: three for delay during plea negotiations and five
for delay during his attorneyÂs pregnancy.Â  The court did not abuse its
discretion by holding the State responsible for the mistrial, which caused an
additional six monthsÂ delay.Â  From the record, the remaining fifteen months are
either unexplained or attributable to resets occasioned by the courtÂs crowded
docket or resets necessitated by scheduling difficulties arising from the
StateÂs decision to try Lewis jointly with his three co-defendants over their
objections.Â  Thus, twenty-one of the twenty-nine months can be attributed to
the State. Â See Dragoo v. State, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003).

Â Â Â Â Â Â Â Â Â  Lewis asserted his right to a speedy
trial within a few months after the mistrial was declared.Â  It was within the
courtÂs discretion to conclude that Lewis did not immediately assert his right
to a speedy trial after the mistrial because he wanted to see how promptly the
State would provide the previously undisclosed evidence.

Â Â Â Â Â Â Â Â Â  Lewis testified about the impact the
delay was having on his education and the stress and anxiety it was causing him.Â 
In addition, ten months after Lewis filed his speedy trial motion and three
days before trial, the State had still not produced all the previously
undisclosed evidence which had necessitated the mistrial.

Â Â Â Â Â Â Â Â Â  Accordingly, we hold that the court
did not abuse its discretion by granting LewisÂs motion to dismiss.

Analysis Regarding Brown

Â Â Â Â Â Â Â Â Â  The length of delay for Brown was thirty-four
months.Â  The evidence supports a finding that only one of these months is
attributable to BrownÂs continuance motion.Â  The court did not abuse its
discretion by holding the State responsible for the mistrial, which caused an
additional six monthsÂ delay.Â  From the record, the remaining twenty-seven
months are either unexplained or attributable to resets occasioned by the
courtÂs crowded docket or resets necessitated by scheduling difficulties
arising from the StateÂs decision to try Brown jointly with his three
co-defendants over their objections.Â  Thus, thirty-three of the thirty-four
months can be attributed to the State. Â See Dragoo, 96 S.W.3d at 314.

Â Â Â Â Â Â Â Â Â  Brown did not directly assert his
right to a speedy trial until the eve of trial.Â  Nevertheless, Brown
essentially argued that he should be credited with asserting his right to a
speedy trial at the same time Lewis did because the attorneys had stated during
the first trial that they were adopting each otherÂs motions.Â  We disagree.

Â Â Â Â Â Â Â Â Â  During the June 2004 trial when the
issue first arose regarding whether the State had possession of one or more
tape recordings which had not been previously disclosed, the following
interchange occurred:

RatcliffÂs Counsel:Â Â Â Â  Judge,
while weÂve got everyone here, I would like to get something on the record.Â 
IÂm making an oral motion to adopt all objections and motions made by other
counsel in this case so that we donÂt have to each objectÂyou know, each one of
us object to make a record.

Â 

ManleyÂs Counsel:Â Â Â Â  Individually.Â 
Yeah.

Â 

RatcliffÂs Counsel:Â Â Â Â  On behalf
of Brandon Ratcliff, I move that the Court allow my client and I to adopt all
motions and objections made by other counsel.

Â 

The Court:Â Â Â Â Â Â Â Â Â Â Â Â Â  Other
defense counsel?

RatcliffÂs Counsel:Â Â Â Â  Yes.

Â 

ManleyÂs Counsel:Â Â Â Â  Yes.Â  I
request the same in regards to Malcom Manley.

Â 

LewisÂs Counsel:Â Â Â Â Â  Your Honor,
I request the same in regards to Mr. Lewis.

Â 

BrownÂs Counsel:Â Â Â Â  I would like
the same for Mr. Brown, as well, Judge.

Â 

The Court:Â Â Â Â Â Â Â Â Â Â Â Â Â  I honestly
donÂt know whether each defendant would automatically get the benefit of
objections made by someone elseÂs attorney on appeal; but IÂll, based onÂ  your
motions, assume that all the motions and objections by any defense counsel have
been adopted by the other three.

Â 

Â Â Â Â Â Â Â Â Â  Fourteen months later and three days
before the second trial was scheduled to begin, Brown first raised the speedy
trial issue on his own behalf.Â  In considering BrownÂs claim and the timeliness
of his assertion, the trial court concluded that, even at the time of the
hearing, Brown had not yet properly asserted the issue because he had not filed
a speedy trial motion.Â  In the courtÂs words near the end of the hearing, ÂIÂm
going to wait until somebody asserts the right.Â[9]Â  The
courtÂs view of the matter is further supported, as the court observed, by the
fact that when the court first heard LewisÂs speedy trial motion in December
2004, BrownÂs counsel and the other attorneys left the courtroom, having
obtained their February trial setting.Â  

Â Â Â Â Â Â Â Â Â  A co-defendant can adopt by reference
the objections of another co-defendant.Â  See Martinez v. State, 833
S.W.2d 188, 191 (Tex. App.ÂDallas 1992, pet. refÂd); Frederick C. Moss, Rethinking
 Texas Evidence Rule 103, 57 Baylor
L. Rev. 503, 539-40 (2004).[10]Â  Nevertheless,
given the passage of time and the failure of Brown and the other Appellees to
participate with Lewis in the December 2004 speedy trial hearing, it was within
the courtÂs discretion to conclude that defense counselsÂ adoption of each
othersÂ objections and motions was limited to those presented in the first
trial and did not extend to the speedy trial motion which Lewis filed several
months later. 

Â Â Â Â Â Â Â Â Â  The court almost explicitly found that
Brown did not assert his right to a speedy trial in a timely fashion.Â  As
BrownÂs counsel observed however, the timeliness of the assertion of this right
is not dispositive.Â  See Dragoo, 96 S.W.3d at 314.Â  Although this is
true, Âa defendantÂs lack of a timely demand for a speedy trial Âindicates
strongly that he did not really want a speedy trialÂÂ  .Â  .Â  .Â  .Â  Thus,
inaction weighs more heavily against a violation the longer the delay becomes.ÂÂ 
 Id. (quoting Harris v. State, 827 S.W.2d 949, 957 (Tex.
Crim. App. 1992)).Â  Accordingly, BrownÂs failure to timely assert his right to
a speedy trial Âweighs very heavily against finding a violation of his right to
a speedy trial.ÂÂ  See Shaw, 117 S.W.3d at 890 (addressing 38-month delay
and defendantÂs failure to file speedy trial motion until 32 months had passed
or seek a hearing until the eve of trial).

Â Â Â Â Â Â Â Â Â  Brown alleged in his speedy trial
motion that he was prejudiced because: (1) he had Âsuffered much anxiety and
concernÂ; (2) unspecified defense witnesses had disappeared and/or their recall
of pertinent events had faded; and (3) the Âexcessive delayÂ has Âpresumptively
compromised the ability to defend this case in ways not susceptible to proof.Â He
offered no testimony to support his allegations of anxiety and concern, nor did
he identify the witnesses who have disappeared or whose recall had faded.

Â Â Â Â Â Â Â Â Â  However, 

affirmative proof of particularized prejudice is
not essential to every speedy trial claim, because Âexcessive delay
presumptively compromises the reliability of a trial in ways that neither party
can prove or, for that matter, identify.ÂÂ  On the other hand, this Âpresumption
of prejudiceÂ is Âextenuated . . . by the defendantÂs acquiescenceÂ in the
delay.

Â 

Dragoo,
96 S.W.3d at 315 (quoting Doggett, 505 U.S. at 655, 658, 112 S. Ct. at 2693,
2694) (citation omitted).

Â Â Â Â Â Â Â Â Â  The delay was presumptively
prejudicial to BrownÂs defense, Âbut this presumption is extenuated by [his]
longtime acquiescence in the delay.ÂÂ  See Shaw, 117 S.W.3d at 890.

Â Â Â Â Â Â Â Â Â  The facts in BrownÂs case are similar
to the facts in Shaw. The length of delay and the reasons for delay
weigh in favor of a finding that his right to a speedy trial was violated.Â  See
id. at 891.Â  Conversely, his failure to timely assert this right and his
failure to demonstrate prejudice weigh against such a finding.Â  Id.Â  But BrownÂs case is different in two respects.Â  First, the trial court found
that BrownÂs right to a speedy trial was violated while the trial court in Shaw
found to the contrary.Â  Cf. id. at 887-88.Â  And second, the delay in Shaw
was generally attributed to a crowded docket, defense continuances, and a
mistrial due to a hung jury.Â  See id. at 886, 889-90.Â  Conversely in
BrownÂs case, the mistrial was due to the StateÂs failure to comply with its obligation
to disclose Brady evidence.Â  And to compound this failure, the State had
still not provided defense counsel with transcriptions of the tape recordings
in question on the eve of trial.

Â Â Â Â Â Â Â Â Â  This is a close question.Â 
Nevertheless, the record supports the trial courtÂs ruling so we Âmust upholdÂ
it.Â  Id. at 889.

Analysis Regarding Manley

Â Â Â Â Â Â Â Â Â  The analysis for Manley is similar to
that for Brown.Â  The length of delay was the same.Â  The evidence supports a
finding that only three of these thirty-four months is attributable to ManleyÂs
continuance motion.Â  Thus, thirty-one of the thirty-four months can be
attributed to the State. Â See Dragoo, 96 S.W.3d at 314.

Â Â Â Â Â Â Â Â Â  Neither Manley nor his counsel
appeared at the August 2005 pretrial hearing in which the court granted LewisÂs
speedy trial motion and heard BrownÂs argument that he was entitled to the same
relief.Â  But Manley did file a speedy trial motion about thirty minutes before
Brown filed his.[11]

Â Â Â Â Â Â Â Â Â  As with Brown, we presume that the
court found that Manley did not assert his right to a speedy trial in a timely
fashion.Â  See Shaw, 117 S.W.3d at 890.

Â Â Â Â Â Â Â Â Â  Manley alleged in his speedy trial
motion the same forms of prejudice caused by the delay as Brown did but offered
no testimony to support his allegations of anxiety and concern and did not
identify the witnesses who have disappeared or whose recall had faded.Â  The
delay was presumptively prejudicial to ManleyÂs defense, Âbut this presumption
is extenuated by [his] longtime acquiescence in the delay.ÂÂ  See Shaw,
117 S.W.3d at 890.

Â Â Â Â Â Â Â Â Â  As with Brown, two of the factors
applicable to Manley weigh in favor of a finding that his right to a speedy
trial was violated and two weigh against such a finding.Â  Id. at 891. Â Nevertheless,
the record supports the trial courtÂs ruling so we Âmust upholdÂ it.Â  Id. at 889.

Analysis Regarding Ratcliff

Â Â Â Â Â Â Â Â Â  The primary distinction in RatcliffÂs
case is that the length of delay (nineteen months) is almost half the length of
delay in BrownÂs and ManleyÂs cases.Â  However, we may presume from the record that
the court attributed the entirety of the delay in RatcliffÂs case to the State.
Â See Zamorano, 84 S.W.3d at 648.

Â Â Â Â Â Â Â Â Â  Neither Ratcliff nor his counsel
appeared at the August 2005 pretrial hearing in which the court granted LewisÂs
speedy trial motion and heard BrownÂs argument that he was entitled to the same
relief.Â  But Ratcliff did file a speedy trial motion about thirty minutes
before Brown filed his and around the same time Manley filed his.[12]

Â Â Â Â Â Â Â Â Â  As with Brown and Manley, we presume
the court found that Ratcliff did not assert his right to a speedy trial in a
timely fashion.Â  See Shaw, 117 S.W.3d at 890.

Â Â Â Â Â Â Â Â Â  Ratcliff alleged in his speedy trial
motion the same forms of prejudice caused by the delay as Brown and Manley did
but offered no testimony to support his allegations of anxiety and concern and
did not identify the witnesses who have disappeared or whose recall had faded.Â 
The delay was presumptively prejudicial to RatcliffÂs defense, Âbut this
presumption is extenuated by [his] longtime acquiescence in the delay.ÂÂ  See
Shaw, 117 S.W.3d at 890.

Â Â Â Â Â Â Â Â Â  As with Brown and Manley, two of the
factors applicable to Ratcliff weigh in favor of a finding that his right to a
speedy trial was violated and two weigh against such a finding.Â  Id. at 891.Â  Nevertheless, the record supports the trial courtÂs ruling so we Âmust
upholdÂ it.Â  Id. at 889.

We affirm the dismissal orders as to all four
Appellees.

Â 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray dissenting)

Affirmed

Opinion delivered and
filed February 7, 2007

Publish

[CR25]

Â 









[1]
Â Â Â Â Â Â Â Â Â  The Court of Criminal Appeals
has reviewed at least two cases involving speedy trial claims in which some of
the delay involved a co-defendant who was not tried jointly with the
defendant whose case was under review.Â  In County v. State, the Court
overruled a speedy trial claim because, among other reasons, Âappellant and his
counsel agreed to a large part if not all of the delay in that they wished to
see appellantÂs co-indictee tried first.Â Â 668 S.W.2d 708, 711 (Tex. Crim. App. 1984).Â  In Deeb v. State, the appellantÂs trial was delayed in part
because DeebÂs co-defendant was tried first.Â  815 S.W.2d 692, 705-06 (Tex. Crim. App. 1991).Â  Deeb Âattempted to establish that this was purely a decision by the
State.ÂÂ  Id. at 706.Â  However, the Court rejected this assertion
stating, ÂIt is difficult to conclude from the record that the State was
maneuvering for a tactical advantage and was therefore responsible for the
delay.ÂÂ  Id.Â  The Court concluded that this was a Âneutral reason for
the delayÂ which Âshould be weighed less heavilyÂ against the State.Â  Id. (citing Barker v. Wingo, 407 U.S. 514, 531, 92 S. Ct. 2182, 2192, 33 L. Ed.
2d 101 (1972)).





[2]
Â Â Â Â Â Â Â Â Â  The federal act was enacted in
1974 and was derived from speedy trial standards first approved by the American
Bar Association in 1968.Â  See ABA
Standards for Criminal Justice: Speedy Trial and Timely Resolution of Criminal
Cases, at 19 (3d ed. 2004) (Introduction to Standards); see also Standards Relating to Speedy Trial Â§
2.3(g) (1968).

Â 





[3]
Â Â Â Â Â Â Â Â Â  Texas enacted a similar statute
in 1977, article 32A.02, section 4(8) of the Code of Criminal Procedure.Â  See
Act of May 23, 1977, 65th Leg., R.S., ch. 787, Â§ 1, 1977 Tex. Gen. Laws 1970,
1971.Â  However, the Court of Criminal Appeals declared article 32A.02
unconstitutional in violation of the separation of powers doctrine as expressed
in article II, section 1 of the Texas Constitution.Â  See Meshell v. State,
739 S.W.2d 246, 257 (Tex. Crim. App. 1987).Â  The Legislature repealed this
statute in 2005.Â  See Act of May 29, 2005, 79th Leg., R.S., ch. 1019, Â§ 2,
2005 Tex. Gen. Laws 3464, 3464.





[4]
Â Â Â Â Â Â Â Â Â  The State contends that Brown
requested two continuances but does not provide a citation to the record to
support this contention.Â  Our review of the record discloses only one
continuance request on BrownÂs behalf.

Â 





[5]
Â Â Â Â Â Â Â Â Â  During the StateÂs
cross-examination of Lewis in this hearing, Lewis agreed that an unspecified
Âplea bargainÂ was made in March 2003 and ultimately rejected by him in
September 2003.Â  An April 3, 2003 Notice of Setting indicates that LewisÂs case
was scheduled for jury trial in May 2003, but an April 23 Notice of Setting
indicates that it was set for a ÂStatus/Class C ReductionÂ hearing in June
2003.Â  A July 11 Notice of Setting recites that the case was again set for jury
trial in September 2003.





[6]
Â Â Â Â Â Â Â Â Â  The clerkÂs record contains two
intervening setting notices during this 6-month period.Â  The first rescheduled
the case for a status hearing four months after the mistrial.Â  The second (as
amended) rescheduled the case for a status hearing and for a hearing on LewisÂs
speedy trial motion two months later.





[7]
Â Â Â Â Â Â Â Â Â  As LewisÂs counsel argued in the
December 2004 hearing, the StateÂs delay in providing this evidence adversely
affected counselÂs ability to Â[f]airly cross-examineÂ the StateÂs witnesses.

Â 





[8]
Â Â Â Â Â Â Â Â Â  Brown was appointed new counsel
in July 2005.Â  Counsel for Manley and Ratcliff did not appear at this hearing
but filed speedy trial motions that afternoon.





[9]
Â Â Â Â Â Â Â Â Â  The court had already announced
its intention to grant LewisÂs speedy trial motion and proceed to trial with
the other three defendants.

Â 





[10] Â Â Â Â Â Â Â Â  According to Professor Moss,

Â 

Â Â Â Â Â Â Â Â Â Â Â  Co-parties
may escape the technical rigors of the Âall must objectÂ rule by seeking a
ruling from the court, preferably before trial, that the objections of one
co-party will be deemed joined by all unless the parties otherwise indicate.
This will preserve error for all co-parties even though they were silent when a
co-party objected to the admission or exclusion of evidence.

Â 

Frederick C. Moss, Rethinking Texas Evidence Rule 103, 57 Baylor L. Rev. 503, 540 (2004).





[11]
Â Â Â Â Â Â Â Â  Brown filed his speedy trial
motion at 2:58 p.m.Â  Manley had already filed his at 2:29.





[12]
Â Â Â Â Â Â Â Â  Ratcliff filed his speedy trial
motion somewhere between 2:20 and 2:29Âthe last number is indecipherable.Â  The
courtÂs signed dismissal order was entered at 2:30.